## THE EDWARD HINES LUMBER COMPANY

### v.

## FRANK LIGAS.

*Opinion filed April 21, 1898.*

1. MASTER AND SERVANT—*master must use reasonable care to protect servant from latent defects.* A master, while not an insurer of his servant's safety, is bound to exercise reasonable care, with reference to the appliances of his business, to protect his servant from injuries arising from latent defects.

2. SAME—*duty to provide reasonably safe appliances is personal.* The master's duty to provide his servant with reasonably safe appliances and places for the work in which he is engaged is personal, and he cannot relieve himself from responsibility for its performance by delegating it to another.

3. SAME—*party charged with duty of preparing place to work represents the master.* Servants to whom the master has entrusted the duty of preparing a place for other servants to work are not, with reference to this particular employment, fellow-servants with those employees for whom the place is prepared.

4. SAME—*servant must take notice of patent defects.* While a servant must take notice of defects which are patent, he is not bound to make an examination for defects, and he may act upon the presumption that the master has used reasonable care in preparing the place for his work, so as to make it reasonably safe.

5. SAME—*when master is liable for servant's negligence.* An employee in a lumber yard entrusted with the duty of placing boards in position for a scaffold on which other employees are to stand while handling lumber, must use reasonable care in selecting boards suitable for the purpose, and the master is liable for his negligent performance of such duty.

*Edward Hines Lumber Co.* v. *Ligas*, 68 Ill. App. 523, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This is an action, brought by the appellee against the appellant to recover damages for a personal injury. The injury occurred on January 30, 1894. The appellant owned a lumber yard in the city of Chicago. On the day in

question, appellant's foreman took appellee to a pile
of lumber in appellant's yard, and ordered him to ascend
to a scaffold upon the side of the pile for the purpose of
handing down lumber therefrom. In obedience to the
order, appellee climbed up upon the pile of lumber, and,
standing upon one of the boards projecting therefrom to
support a scaffold, was precipitated to the ground by the
breaking of the board, and thereby received the injuries
complained of. The pile of lumber, where the injury oc-
curred, was about thirty feet high. On one side of the
pile were three boards, projecting therefrom, one at each
end, and one in the middle. These boards were one inch
thick, twelve inches wide, and projected about three feet
from the face of the pile. They were placed in this posi-
tion when the pile was built, for the purpose of support-
ing boards, which should be thereafter placed on them
along the face of the pile, so as to form a scaffold. Upon
scaffolds so formed, the laborers in the yard would stand
to hand down lumber from the pile. It was necessary,
that each of these projecting boards should be strong
enough to support, not only the weight of the man stand-
ing upon them, but of the boards placed on them to form
the scaffold.

The board which was broken under the weight of the
appellee was defective by reason of a knot therein. This
knot was in a portion of the board nearest to the pile;
the knot could not be seen from the bottom; on the top
of the board it was rough. When lumber is to be taken
from a pile, high enough to make necessary the use of
the scaffold, one man goes on the top of the pile and one
man on the scaffold; the former hands the pieces of lum-
ber down to the latter. Appellee entered appellant's
employ in May, 1893, and continued therein until the day
of the accident. During that time he was engaged as a
laborer about the yard, handling lumber therein. The
pile of lumber in question was not built by the appellee,
but by one Emanuel Rybar, an employe of the appellant.

W. B. KEEP, (MORAN, KRAUS & MAYER, of counsel,) for appellant.

BRANDT & HOFFMANN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The opinion of the Appellate Court, rendered upon the decision of this case, correctly disposed of the questions involved, and is adopted as the opinion of this court. That opinion is as follows:

"A master is bound to the exercise of reasonable care with reference to all the appliances of his business, and is bound to protect his servants from injury therefrom by reason of latent or unseen defects, so far as such care can do so; but the master is not an insurer to his servant against injury, and is only chargeable for damage happening to his servant from defective appliances when negligence can properly be imputed to him. The servant is bound to see for himself such risks and hazard as are patent to observation, and is bound to exercise in the discovery of risks and hazards such opportunities for observation, skill and judgment as he possesses; but when the danger from a defective appliance is not patent, the servant has a right to presume that the master has discharged his duty, and that the appliances of the business are reasonably safe and free from hazard. Wood on Master and Servant, p. 680.

"The duty of the master to exercise reasonable care that the machinery, appliances and place to work which he supplies to the servant are reasonably safe, is a personal one, and he cannot, by delegating it to another, absolve himself from liability for its non-performance. *Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242.

"Where a servant is injured by the negligence of a fellow-servant of the common master, the master is not liable. In this State, in order that one servant should

be the fellow-servant of another, their duties must be such as to bring them into habitual association, so that they may exercise a mutual influence upon each other promotive of proper caution. *Joliet Steel Co.* v. *Shields,* 134 Ill. 209.

"As in very many instances, and, as regards corporations, in all cases, the master, through the instrumentality of agents, supplies to the servant machinery, tools and appliances, and provides a place for him to work, much discussion has arisen, in cases of accidents arising from defective machinery or appliance, as to whether the agent of the master by whom such machinery or appliance was supplied was the fellow-servant of the person injured, it being insisted that if such was the case the master should not be held liable. In many instances the court, upon its discussion of the subject, has come to the conclusion that the agent supplying the machinery or appliance was not a fellow-servant of the person injured, within the rule by which the relation of fellow-servants is determined.

"Our attention has been called to the opinion of the court in *Frazier* v. *Red River Lumber Co.* 45 Minn. 235, in which the court says that, in its opinion, an important consideration, often overlooked, is whether the structure, appliance or instrument is one which has been furnished for the work in which the servants are to be engaged, or whether the furnishing and preparation of it is itself part of the work which they are employed to perform. If it be the latter, then, the court goes on to say, the master is not liable.

"There is a certain incongruity in holding that the duty to exercise reasonable care in providing reasonably safe appliances and machinery is a personal one, which can not be delegated, and at the same time holding that if the failure to exercise such reasonable care was the neglect of a fellow-servant of the party injured then the master is not liable; and it seems more correct to say

that agents who are charged with the duty of supplying safe machinery and appliances are not, when so doing, in the true sense, to be regarded as fellow-servants of those who are engaged in the use of the same.

"This subject has received very intelligent and able consideration in *Northern Pacific Railway Co.* v. *Herbert,* 116 U. S. 642, the conclusion reached being, that where the employe is not guilty of contributory negligence no irresponsibility for the injury to him, caused by the defective condition of the machinery and instruments with which he is required to work, should be admitted, except it could not have been known or guarded against by proper care and vigilance on the part of his employer. The subject was also recently carefully considered in *Moynihan* v. *Hills Co.* 146 Mass. 586, in which the court said: 'In the absence of an express stipulation, the master impliedly agrees to provide and maintain reasonably safe and suitable machinery and appliances, as far as the exercise of proper care on his part will secure them, and the servant agrees to assume all the ordinary risks of the business, and among them, the risk of injury from the negligence of his fellow-servants. This obligation which the master assumes is personal, and appertains to him in his relation to the business as proprietor and in his relation to the servant as master, and it has been repeatedly held that he cannot discharge it by delegating a performance of his duty to another;   *   *   *   and if he employs agents or servants to represent him in the performance of this duty, they are, to that extent, agents or servants for whose conduct he is responsible. The very nature of the implied contract created by the hiring, whereby he undertakes to use proper care in always providing safe tools and appliances, is inconsistent with his delegation of the duty to a fellow-servant for whose negligence he is not to be responsible.'

"In *Lewis* v. *Seifert,* 116 Pa. St. 628-647, the court said: 'There are some duties which the master owes to his

servant and from which he cannot relieve himself except by performance. Thus, the master owes to every employe the duty of providing a reasonably safe place in which to work, and reasonably safe instruments, tools and machinery with which to work. This is a direct personal and absolute obligation, and while the master may delegate these duties to an agent, such agent stands in the place of his principal, and the latter is responsible for the acts of such agent.'

"In Wood on Master and Servant it is said that in an action like the present the servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions: First, that the appliance was defective; second, that the master had notice thereof, or knowledge, or ought to have had; third, that the servant did not know of the defect, and had not means of knowing equal to those of the master. Wood on Master and Servant, sec. 414; *Goldie* v. *Werner*, 151 Ill. 551.

"In the present case the jury has found all of these propositions for appellee. As to the first, it is clear that the appliance was defective. Did the master have notice thereof? The defect was one which could have been discovered upon examination with a view to ascertaining whether the board which broke was suitable for the purpose for which it was used. Was the defect patent? Was it such that appellee, by the exercise of ordinary care for his own safety in the discharge of his duty to appellant, would have discovered? As to this, it must be borne in mind that while the servant must take notice of things that are patent, he is not bound to make an examination for defects, but has a right to act upon the presumption that the master has discharged his duty to exercise reasonable care to see that the appliance is reasonably safe for the use to which it is to be put. Appellee was bound not only to take notice of what was patent, but to exercise ordinary care for his own safety, while appellant was bound to exercise reasonable care in selecting the

materials out of which the scaffold upon which appellee was told to go, was constructed.

"Upon an examination of the record we cannot say that the jury was wrong in finding, as it did, that the defect in the board which broke was not so patent that appellee should have taken notice of it, or that, when told to make use of the same, appellee failed to exercise ordinary care by not examining the board to see if it was defective. Under the rule that the servant has a right to presume that the master has discharged his duty of exercising reasonable care to see that the appliances supplied are reasonably safe for the use to which they are to be put, the servant is not bound to look for defects which are not patent to a man of his intelligence, knowledge and experience. *Goldie* v. *Werner*, 50 Ill. App. 297.

"We cannot say that the jury was wrong in refusing to find that the opportunity of appellee for ascertaining the defect in this board was equal to that of the appellant. The board was selected by appellant, put in its place to be used as a part of the scaffold by his agents, who, when they did this, were not, in so doing, fellow-servants of appellee.

"Whether the men who constructed this platform were fellow-servants of appellee as regards matters other than the supplying of machinery, appliances or place to work, is a question which in this case we do not think we are called upon to answer. Nor need we discuss what the liability of appellant would have been had appellee been one of those by whom this scaffold was erected. In such case, it may be that appellee's opportunities for knowing the character of the material entering into the composition of this scaffold would have been equal to those of appellant, and that thus, having notice of the defect, he could not recover for an injury caused thereby. It seems clear that appellee did not assist in constructing this platform, and while it is true, as argued, that in the use thereof it was expected that boards would be laid along

upon the projecting boards one of which broke, we do not see that appellee, being told to climb up as he did, could in the first instance have placed these other boards without, before that, resting his weight upon one of the projecting boards.

"The jury was fairly instructed, so that we find in the record no error warranting a reversal of the judgment of the Superior Court, and it is affirmed."

For the reasons stated in the foregoing opinion, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*