## William J. Ross and John Ross v. Francis Shanley.

1. MASTER AND SERVANT—*Master Must Provide a Reasonably Safe Place for the Servant.*—It is the duty of the master, or the foreman who represents him, to see that the place where he orders the servant to work is reasonably safe.

2. SAME—*Servant Has a Right to Rely upon the Performance of the Master's Duty.*—A servant has the right to rely upon the performance of the duty of the master to provide a reasonably safe place for his work, and is not required to make a critical and careful examination of his surroundings.

3. ORDINARY CARE—*A Question for the Jury.*—It is a question for the jury to determine whether a master's foreman has exercised reasonable and ordinary care to see that the place where he orders the servant to work is reasonably safe before he sends him there to work, and also whether the servant knows or should know the danger to which he is exposed.

4. PRACTICE—*Variance Between the Declaration and Proof.*—Where a plaintiff amends his declaration he avoids all question of variance if the defendant's evidence supports the amended declaration.

5. TORT FEASORS—*Joint Feasors Severally Liable.*—In an action for a tort the plaintiff may sue any one or more of the joint tort feasors and may have a judgment against any one or any number of the persons so sued, who are shown to be guilty of the tort alleged.

**Action in Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed November 27, 1899. Rehearing denied.

**Statement by the Court.**—Appellee, a brick-layer and experienced tunnel-worker, while in the employ of appel-

Ross v. Shanley.

lants, who are copartners in business as Ross & Ross, was injured in his back and had one leg broken at the ankle, a compound fracture, while working in a tunnel being constructed by appellants for the city of Chicago, on the 10th day of April, 1896. He brought suit against the city of Chicago, and also against John McRae and appellants as partners under the name of Ross, McRae & Ross. At the close of all the evidence the suit was dismissed as to the city, and during the argument to the jury there was also a dismissal as to McRae and an amended declaration filed at that time. There was a judgment for $2,000 in appellee's favor against appellants, from which this appeal is taken.

The original declaration, in its first count charges the defendants with negligence in failing to furnish to plaintiff a safe place in which to work; that they carelessly and negligently set plaintiff to work in a place in the tunnel where the clay composing the ceiling thereof was not properly propped up, and where no other careful or prudent method was adopted by defendants to prevent the ceiling of the tunnel from falling down on plaintiff while engaged at work; that said place was dangerous and unsafe for plaintiff to work in and around, which facts were well known to defendants and each of them, and unknown to plaintiff, and that he could not, in the exercise of ordinary care on his part, have ascertained said facts.

In the second count the negligence charged is in failing to warn plaintiff of the hidden, unusual and unforeseen hazards and dangers in and about said work, and makes practically the same allegations as in the first count with regard to the condition of the ceiling of the tunnel and as to the knowledge thereof of the defendants and plaintiff respectively. To this declaration all of the defendants pleaded the general issue, and when the amended declaration was filed, during the argument and after the dismissal as to the city and McRae, the remaining defendants, the appellants here, pleaded the general issue and the statute of limitations to the amended declaration. A demurrer to the plea of the statute of limitations was sustained. The amended decla-

ration is in substance the same as the original, except that wherever the name of McRae and the city of Chicago in the original, declaration appear, they are omitted in the amended declaration. At the close of the plaintiff's case, and also at the close of all the evidence, the defendants asked the court to instruct the jury to find them not guilty, which was refused.

When the amended declaration was filed, appellants' counsel also asked a dismissal of the cause for the reason, as he claimed, there was a variance between the proof and the amended declaration, the proof being that Ross, McRae & Ross employed appellee, whereas the declaration alleged that the firm doing the work was Ross & Ross, which was denied.

It appears from the evidence that appellee went to work in the tunnel in question on Monday evening, previous to the accident, which happened on Friday morning about two o'clock, and had worked in the tunnel the intervening nights of Tuesday and Wednesday; that Drury, the regular foreman of the brick-layers' gang of which appellee was a member, was not present on the first night, but that the foreman who took his place ordered appellee to work at the face of the tunnel; that he did so, and that on the night before the accident Drury told appellee to work at the face of the tunnel, stationed him there, and that was his place, and he continued to work there until the time of his injury. Appellee testified that on the night of the injury Drury did not say anything to him, but other of appellee's witnesses said that they heard Drury tell appellee to go to work at the face of the tunnel.

The evidence also shows that the tunnel was about ten feet in diameter before the brick was laid, and after the brick was laid, that it was about seven feet; that three gangs of men were engaged at working on the tunnel, two being miners and one gang brick-layers, each working eight hours; the miners blasted the earth loose, removed it in cars, trimmed up the sides, and end or face of the tunnel, as it is called, practically smooth, and then shored it up for

the brick-layers; that the shoring was done by placing crutches or heavy timbers opposite each other, which met in the center of the arch or ceiling of the tunnel, the ends being stuck in the sides of the tunnel and wedged in; that on top of the crutches in the center there was placed a plank about a foot wide, about two inches thick, and from twelve to fourteen feet long, called the crown plank, and on either side of the crown plank, another similar plank on the crutches, and next to the clay; that this was the common method in use in and about Chicago; that the miners would remove about twenty-seven to thirty feet of the dirt in length of the tunnel, and shore it up before the brick-layers commenced, this being called a shift; that the shoring commenced on each shift where the previous shift stopped, and the planks extended toward the face of the tunnel, but as to how near to the face of the tunnel they usually extended, there is a conflict; that there were usually two to three sets of crutches to a shift; that on the night of the injury the work of the miners was inspected by the city mining inspector, who testified that its condition was all right; that Drury, the brick-layers' foreman, also looked at the miners' work before the brick-layers went to work, and testified that it looked the same as it usually looked, and that it was good work; that he could not see it very well because of the imperfect light, but that the tunnel was lighted as usual; that a quantity of clay, variously estimated by the witnesses at from 150 to 600 pounds in weight, fell upon appellee from the ceiling above, while he was engaged at laying brick near the face of the tunnel; that the rate of wages of brick-layers on outside work was at the time of the accident four dollars per day, and that appellee received for his work on this job six dollars per day because of the dangerous and hard work required; that appellee and two other brick-layers were expected to lay 13,000 bricks in about seven hours. Appellee testified that he worked "as hard and fast as ever he could" while at his work.

There is a conflict in the evidence as to the usual manner of shoring up a tunnel such as the one in question, some of

the witnesses testifying that the usual way was to shore it up right to the face, and others that it was usually shored up to within two to three feet of the face, according to the character of soil.

Butler, the city mining inspector, testified that in the character of ground in this tunnel it was not considered necessary to run the planking to the face. There was evidence that the soil in this tunnel had some sand in it; that it was mixed clay and sand. There was also evidence that it was clay, and that was the testimony of appellee himself, except that he said there was sand in the scales in the joints between the flakes of clay that fell upon him; that it was " what we call sand and clay formation."

There is also a conflict in the evidence as to how the shoring was done at the time of the accident, some of the witnesses saying that the shoring extended to within about two feet of the face of the tunnel, and others that it was not nearer than four, five, or even six feet from the face.

There was a further conflict as to the usual method of placing the crutches to support the planks, and also as to how they were supported at the time of the accident, some of the witnesses saying that the crutch nearest the face of the tunnel was within six inches of the end of the planks, and others that it was from three to five feet back from the end of the planks and from seven to nine feet from the face of the tunnel. Butler, the city inspector, testified that from the face of the tunnel to the east crutch (the one nearest the face) was about six feet, and that there was nothing between it and the end of the plank, which he said was two feet from the face of the tunnel, to support the plank except its stiffness, and that that was the condition when appellee was hurt.

The clay which injured appellee came from a point mostly between the end of the planks and the face of the tunnel, but several of the witnesses testified that some of the dirt came from above the plank, and that the end of the plank was sprung down.

It also appears that on the first night that appellee went to work, he examined the shoring and saw that the ends of

the plank were then about two feet from the face of the tunnel; that he did not on the night of the injury examine the shoring critically. He testifies, however, that the ends of the planks were about four feet from the face of the tunnel at the time he was hurt.

It further appears from the plaintiff's evidence that appellee was employed by and worked for the firm of Ross, McRae & Ross, but the evidence on behalf of the defendants shows that appellee was employed and paid by and worked for the firm of Ross & Ross.

WM. M. JOHNSON, attorney for appellants.

JOHN F. WATERS, attorney for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellants' counsel, in his brief, makes twenty-one different points on account of which he claims that the judgment should be reversed. We think they may be all summarized under four different headings, viz: First, that the negligence charged was not proven; second, that the hazard was assumed by appellee; third, that there was a variance between the proof and the allegations of the amended declaration; and fourth, that the court erred in sustaining the demurrer to the plea of the statute of limitations to the amended declaration.

As we have seen, there is a conflict in the evidence as to the usual manner of shoring the tunnel in which appellee was placed to work, in order to make it safe, and there was also a conflict as to the manner of the shoring, both as to the placing of the crutches and the nearness to which the planks used in shoring came to the face of the tunnel; and we are not prepared to hold, after a careful and critical reading of the evidence, that the jury were not justified in finding that the shoring did not extend sufficiently near to the face of the tunnel, and that the crutch nearest the face of the tunnel was not sufficiently near to the end of the planks to make a reasonably safe place in which appellee could

do his work. Appellee was ordered by appellants' foreman to work where he did at the time of the accident. Appellants' foreman, in ordering appellee to work where he did, was charged with the duty of seeing that the place was reasonably safe. He represented appellants, and for them was bound to take reasonable precautions for the safety of appellants' employes. Ill. Steel Co. v. Schymanowski, 162 Ill. 459; Consolidated Coal Co. v. Haenni, 146 Ill. 625; Hess v. Rosenthal, 160 Ill. 628; C. & E. I. R. R. Co. v. Hines, 132 Ill. 169; Cribben v. Callaghan, 156 Ill. 551; Hines L. Co. v. Ligas, 172 Ill. 315; Offutt v. World's Col. Exp., 175 Ill. 472.

But it is said that appellee assumed the risk of any dangers of his work, and being an experienced man in tunnel work, was chargeable with knowledge of any defects in the shoring which existed; that he knew, or could have known by the exercise of ordinary care on his part, any such defects as well as appellants' foreman. This contention is not, in our opinion, tenable. Appellants' foreman was charged with a specific duty, to wit, that of exercising reasonable care to see that the place where he sent appellee to work was reasonably safe, and appellee had a right to rely upon the performance of such duty by appellants' foreman before he gave the order for him to work where he did. Appellee was not required to make a critical and careful examination of his surroundings at the place where he was sent to work by the foreman. We think it was properly left to the jury to determine whether appellants' foreman exercised such reasonable and ordinary care to see that the place where he ordered appellee to work was reasonably safe before he sent him there to work, and also whether appellee knew or should have known the danger to which he was exposed. We can not say the verdict is manifestly against the evidence. Schymanowski case, *supra;* C. & E. I. R. R. Co. v. Hines, 132 Ill. 169; Nat'l Syrup Co. v. Carlson, 155 Ill. 215; Dollemand v. Saalfeldt, 175 Ill. 310; C. & E. I. R. R. Co. v. Knapp, 176 Ill. 127; McGregor v. Reid, 178 Ill. 464.

We think the foregoing considerations sufficiently dispose of the first and second points.

The third contention, that there is a variance between the allegations of the amended declaration and the proof, is not sustained by the record. It is true that the evidence on behalf of appellee shows that he was employed, worked for, and was paid by the firm of Ross, McRae & Ross, and this conformed to the allegation of the original declaration. The evidence offered on behalf of the defendants showed quite conclusively that appellee was employed, paid by and worked for the appellants, Ross & Ross. When this proof was made, and while the case was being argued, appellee filed his amended declaration, the allegations of which conformed to the proof so made by the appellants. By thus amending, appellee avoided all question of variance, for the reason that the appellants' evidence supported the amended declaration in this regard.

As to the fourth contention, that there was error in the ruling of the court in sustaining a demurrer to appellants' plea of the statute of limitations to the amended declaration, we are of opinion it can not be maintained. The amended declaration states the same cause of action as the original declaration, in all respects. The only difference between the two declarations is the omission of the names of the defendants McRae and the city of Chicago from the amended declaration, which names were included in the original declaration and are charged in it as joint tort feasors with the defendants Ross & Ross. It is elementary and needs the citation of no authorities to establish the proposition that in an action for a tort the plaintiff may sue any one or more of the joint tort feasors, and may have a judgment against any one or any number of the persons so sued, who are shown to be guilty of the tort alleged. It seems clear, therefore, and beyond all controversy, that the amended declaration in this case did not state a new cause of action different from the original, and that the ruling sustaining the demurrer to the plea of the statute of limitations was correct.

The judgment of the Circuit Court is affirmed.