## Chicago & Eastern Illinois R. R. Co. v. James Huff.

1. PRACTICE—*When Case Should Be Submitted to Jury.*—Where the evidence tends to support the material averments of the declaration the case is properly submitted to the jury.

2. MASTER AND SERVANT—*Servant May Assume that the Master has Used Ordinary Care and Diligence to Furnish Him Proper Appliances.* —The servant has the right to assume that the master has used ordinary care and diligence to furnish him reasonably safe appliances for his work.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge presiding. Heard in this court at the May term, 1902. Affirmed. Opinion filed November 1, 1902.

H. M. STEELY, attorney for appellant; W. H. LYFORD, of counsel.

Mabin & Clark, attorneys for appellee.

Mr. Justice Burroughs delivered the opinion of the court.

This was an action on the case, brought by the appellee, James Huff, against the appellant, Chicago & Eastern Illinois Railroad Company, in the Circuit Court of Vermilion County, to recover damages for personal injuries alleged to have been received by him while performing his duties as a servant of the company, as a result of its negligence. The case was tried by jury and resulted in a verdict and judgment in favor of the appellee for $1,000 damages. The appellant moved to set aside the verdict and grant a new trial, but the court denied the motion. Appellant excepted, brings the case to this court by appeal, and to effect a reversal of the judgment, its counsel argues for error that the court improperly overruled appellant's motion to exclude the evidence for a variance between it and the charge made in the declaration; that the court gave the jury improper instructions and refused and modified proper instructions; that the verdict and judgment are contrary to the evidence and the law applicable thereto; and that the damages awarded are excessive.

The declaration charged that on May 15, 1901, the appellee was in the employ of the appellant as a carpenter, and in the course of performing his duties as such, it was at that time necessary for him to be upon a certain scaffold which was furnished him by the appellant for that purpose, and had been constructed by other servants of the appellant who were not fellow-servants of the appellee; that by reason of the negligence of the appellant, said scaffold was weak, insufficiently braced and supported, and not reasonably safe for the purposes for which the appellant intended it should be used; that the appellant had knowledge of the defective condition of the scaffold, or by the exercise of ordinary care might have known it; that while appellee was upon said scaffold in the usual course of his said employment and in the exercise of due care and caution for his safety, by reason of its being weak and insufficiently

braced and supported as aforesaid, it gave way, and he was thereby thrown to the ground with great force, and both bones of his arm were broken and his head and other parts of his body greatly bruised, causing him permanent injuries, and hindering and preventing him from transacting his ordinary affairs from thence hitherto; and alleges that the appellee was thereby damaged $10,000, for which he sues.

The appellant pleaded not guilty, upon which issue was joined. The evidence shows that on and before May 15, 1901, the appellee was in the employ of the appellant as a carpenter, and on that day was engaged in putting a cornice on a one-story five-room house which the appellant was having constructed at Joppa, Illinois. The house had so far progressed at this time that the roof was on, and it required a scaffold about twelve feet above the ground for the men to stand upon while putting on the cornice. This scaffold had been put there before the appellee began work on the house by men in the employ of appellant who worked with a different gang of men from the one with which appellee worked.

The scaffold was constructed by nailing one end of the brackets to the studding in the sides of the house, and the other end to two by four upright pieces which were ten or twelve feet apart and braced. These brackets were of pine, one inch thick, four inches wide and about four feet long. Upon the top of the brackets two planks were laid alongside of each other, and they were two inches thick and ten inches wide, except for a short distance where there was only one plank of that size.

About two o'clock in the afternoon of May 15, 1901, the appellee, who was upon this scaffold putting cornice on the house, having used all the nails brought in his apron when he came to work there after dinner, asked Mr. Cook, a fellow-carpenter at work on the same scaffold putting on another part of the cornice, to give him some nails. Mr. Cook told him he would if appellee would come to where he (Cook) was at work and get them. In order to save the time required to go to the ground for nails, the appel-

lee went to the scaffold to where Mr. Cook was, to get
nails from him, and when he reached him, the scaffold fell
and both were thereby thrown to the ground, and the left
arm of the appellee was broken at or near the wrist joint,
and his head and back were painfully bruised.  In the
opinion of some physicians, appellee's injuries will not be
permanent, but he has been unable as yet to use his broken
arm to any considerable extent;  and he has suffered and
still suffers much pain from the injuries received when he
fell.

At the time appellee fell, he was being paid $2.25 per
day by the appellant for his work, and was considered a
good carpenter; but since that time, he has been unable to
use his arm as before, or to do carpenter work, but some
of the time since his arm was broken, he has earned about
the same wages as before, by working for an insurance
company and superintending others who were doing car-
penter work.

About twenty-eight years ago, appellant had the same
arm broken in about the same place; but aside from leav-
ing a small knot on his arm, it was all right.

During the trial, counsel for the appellant moved the
court to exclude the evidence " on the ground of variance
between the pleadings and the proof, in this, that the
pleadings charge that they (appellant) furnished a scaffold
which was insufficiently braced, and was not then and
there reasonably safe for the purpose for which it was
intended.  The evidence is along the line of defective
material."  But the court overruled the motion and ap-
pellant excepted.

At the close of the evidence of the appellee, and again
at the close of all the evidence, counsel for the appellant
requested the court in writing, to instruct the jury to find
for the appellant, which was refused at both times and an
exception was preserved.

We think the court properly refused appellant's motion
to exclude the evidence for variance with the charge
made in the declaration, for the reason that there was no

such variance, as the charge in the declaration was that the appellant negligently furnished the appellee a scaffold to work upon, which was weak, and insufficiently braced and supported, and not reasonably safe for the purpose for which it was intended; that while appellee was upon the scaffold in the usual course of his employment as the servant of appellant, and in the exercise of due care and caution for his safety, by reason of its being weak and insufficiently braced and supported, it gave way, and appellee was thereby thrown to the ground and injured; and the evidence showed that the brackets which supported the planks of the scaffold upon which the appellee and his fellow-carpenter (Mr. Cook) had to stand while putting the cornice on the house, were so weak that one of them broke when the appellee and his fellow-carpenter came near each other upon it, while in the usual course of performing the work they were employed by appellant to do upon it; that two carpenters were put to work upon the scaffold by the appellant; and that the brackets were of pine, one inch thick, four inches wide and about four feet long, which tended strongly to show that the scaffold was too weak for the purpose for which appellant intended it should be used; therefore the proof did not vary from the charge made in the declaration, but supported it.

The court, we think, properly refused to instruct the jury to find for the appellant for the reason that the evidence tended to support the material averments of the declaration and the case was therefore properly submitted to the jury.

It is strongly contended that the appellee was not exercising due care for his own safety and acting in the line of his duty when he voluntarily went to where his fellow-carpenter was working on the scaffold, but we think that inasmuch as it was usual for one carpenter to go to another on the scaffold to get nails, that the jury were warranted in finding that the appellee in so doing acted in the line of his employment, and as he did not then know the scaffold was so weak that it might break if two persons were close

together upon it, he was at the time in the exercise of ordinary care for his safety.

And it is also contended that the appellee had equal means of knowing the strength of the scaffold as the appellant, as it was his duty to observe it and discover its weakness before going on it to work, and for that reason he assumed the danger of its falling when he went on it.   But we think that the appellee, as such servant of the appellant (his master), was not bound to critically and carefully examine the scaffold furnished him by his master for the performance of his duties before going upon it to work, for he had the right to assume that the master had used ordinary care and diligence to furnish him a scaffold that was reasonably safe for that purpose; for he did not know the size or strength of the brackets, but the appellant did or should have.   Ross v. Shanley, 185 Ill. 390; Edward Hines Lumber Co. v. Ligas, 172 Ill. 315; Chicago & Eastern Illinois R. R. Co. v. Knapp, 176 Ill. 127; City of La Salle v. Kostka, 190 Ill. 130; and Rock Island Sash & Door Works v. Pohlman, 99 Ill. App. 670.

We find nothing in the decision of the case of Armour v. Brazen, 191 Ill. 117, which conflicts with the decisions made in the case above cited, or that supports the contention of counsel for the appellant in this case.

At the request of the appellee, the court gave five instructions to the jury after modifying two of them; and at the request of counsel for the appellant, the court gave eighteen instructions to the jury after modifying four of them, and refused six instructions which counsel for the appellant had requested to be given.

We have carefully read all the instructions which the court gave, refused and modified, in the light of the criticisms which counsel for appellant have made with reference to each of them, but we fail to find wherein the court has committed any prejudicial error in ruling upon any one of them.

The damages awarded are not so large as to evince any passion or prejudice on the part of the jury toward the

appellant when it is considered that the appellee of necessity suffered much pain from his broken arm which has prevented him from prosecuting the work of carpentering at which he was skilled and earned good wages.

Upon the whole record it seems to us there was a fair and impartial trial of this case, with a corresponding result, and therefore the judgment should and will be affirmed.