## Illinois Steel Company v. John Olste.

### Gen. No. 4,356.

1. REASONABLE CARE—*what does not absolve master from duty of exercising.* The fact that a servant is engaged in dangerous work does not absolve the master from his general common-law duty of using reasonable care to avoid injury to his servant.

2. FELLOW-SERVANTS—*when co-employees are not.* Where one of the employees claimed as a fellow-servant of the plaintiff is engaged by the direction of the master in the performance of one of the master's non-delegable duties, he is not a fellow-servant of the plaintiff.

3. FELLOW-SERVANTS — *when co-employees are not.* Where co-employees are never brought into association with each other and perform wholly distinct duties, they are not, as a matter of law, fellow-servants.

4. SERVANT—*right to assume performance of duty by master.* A servant has a right to assume that the master has performed his duty, and to act accordingly.

5. ASSUMED RISK—*what within doctrine of.* A servant only assumes such obvious risks as remain after the master has performed his duty.

Action on the case for personal injuries. Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904. Rehearing denied October 5, 1904.

JOHN H. GARNSEY, for appellant; KEMPER K. KNAPP, of counsel.

BARR, BARR & BARR and J. W. DOWNEY, for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is an action on the case in the Will county Circuit Court to recover damages for a personal injury received by John Olste while in the employ of the Illinois Steel Company at Joliet, on the 10th day of February, 1901. A verdict was rendered in favor of appellee and his damages assessed at $7,000, upon which the court rendered judgment and the defendant appeals.

The appellant was operating furnaces at Joliet at the time of the accident. The ore for the furnaces was dumped out of cars which were elevated on a trestle about twenty or twenty-two feet high until the ore piled up as high as the trestle. This ore was then shoveled into a two-wheeled barrow which would hold a ton and pulled and pushed on a track and wheeled off to where it was dumped into the furnaces. In freezing weather a crust from three to six feet thick would freeze on the top of this pile of ore and it was necessary to provide a gang of men to loosen and break down this crust so as to prevent its falling and injuring the men who were engaged in loading and wheeling out the ore from the base of the pile. Appellant had placed the work of keeping this crust broken down in charge of a foreman by the name of Wylie and a gang of men under his charge.

Appellee was engaged in loading and helping to push

out loads of ore at the face or base of the ore pile, and was under the control of Rosenfield and Mallette, both of whom were representatives of appellant and had power to employ and discharge appellee. The face of the ore pile where appellee and others were engaged in loading the "buggies" or barrows was fifty or sixty feet long and was uneven and irregular in shape. In shoveling out from the base of the ore bank, the frozen ore which formed a sort of roof over the dump would project out over the place where the men were working below, thereby exposing them to the danger from the possible falling of the protruding crust above. At the time of the accident appellee had been called from the place where he was loading a buggy to assist in pushing out a load which had been shoveled up by another workman; the evidence shows that it was usual and necessary for the men to assist in pushing out loads for each other. The evidence also shows that appellee had been ordered by Rosenfield to work at the face of the ore dump on the day of the accident; while appellee was pushing on the buggy a large chunk of frozen ore fell from the top and crushed him against the buggy inflicting very serious injuries. Appellee's brief gives the following as a synopsis of the charges contained in the declaration :

"Appellee's declaration contains six counts and charges negligence in allowing the side of said slope or ore pile to become and remain unsupported and overhanging so that the under part of said pile of ore would not support the upper part of the same and was therefore dangerous, which condition was known to appellant and unknown to appellee; in not affording appellee a safe place in which to work; in loosening that portion of the pile of ore which fell down, without the knowledge of appellee; in ordering the appellee to work in a dangerous place, and a general allegation of negligence in operating and maintaining said pile of ore."

The appellant raises no question as to giving or refusing instructions nor to any ruling of the court on the admission or exclusion of evidence or that the verdict is excessive.

All contentions may be summarized in a few words, as follows: the evidence does not show appellant was guilty of negligence as charged; the injury resulted from an assumed risk; appellee was guilty of contributory negligence.

Appellant admits the place where appellee was at work was dangerous but contends that in view of the character of the work, it was as safe as it reasonably could be.

The third point in appellant's brief states that the rule requiring the master to furnish the servant a reasonably safe place to work is not applicable to a case where the work in which the servant is engaged is destructive of the building or structure upon which he is employed or which causes constant changes in the surroundings, and quite a number of cases are cited, most of them from the Appellate Court of this state, in which damages were claimed for injuries received in wrecking buildings or other structures.

In Pressed Steel Car Co. v. Herath, 110 App. 596, this court had occasion to discuss the general principles of law as applied to a wrecking case, and we there held that the fact that the servant was engaged in a dangerous work, such as the tearing down of a building, did not absolve the master from his general common-law duty to use reasonable care to avoid injury to the servant. The fact that the place may still be dangerous after the master has discharged his duty of making the place as safe as could reasonably be expected, in view of the character of work to be performed, by the exercise of reasonable care on his part, affords no reason why he should be absolved from his duty to the servant, but reason and humanity requires that the master should be held to a performance of his duty under such circumstances, to the end that the hazards of a dangerous situation be not unnecessarily increased by his negligence. It is altogether possible that a condition might exist where all that the master could reasonably do would have little or no effect in reducing the danger or in rendering the place safer, and in such case negligence would not be imputable to him under the facts of such a case, but no rule of law would thereby be established that would release

all masters from all duty to exercise reasonable care to avoid injury to the servant in all cases where the work is the same general class.    Any expression of the Appellate Court which seems to announce the contrary doctrine should, we respectfully suggest, be construed as the expression of a conclusion of fact in the case before the court and not the announcement of a principle of law.    See Pressed Steel Car Co. v. Herath, *supra*, and cases there cited.

Recognizing its duty to keep the crust, overhanging the appellee and his fellow workmen, broken down so as to render the place reasonably safe, appellant set foreman Wylie and his crew to do the work; while engaged in thus making the place reasonably safe Wylie and his men represented the master; the duty of the master in this regard cannot be delegated so as to make the agent performing the master's duty a fellow-servant.    Chicago & Alton R. R. v. Eaton, 194 Ill. 441; Hines Lumber Co. v. Ligas, 172 Ill. 315; Pullman Palace Car Co. v. Laack, 143 Ill. 242.

Again, the duties of appellee never brought him into association with Wylie and his men.    They performed wholly distinct duties, as much so, as if they had been servants of different masters; under such circumstances it results as a matter of law that they were not fellow-servants. Spring Valley Coal Co. v. Patting, 210 Ill. 342.

It is reasonably certain that the accident was caused by a failure of Wylie to keep this overhanging crust broken off so as to prevent its falling of its own weight; it is also apparent that with a sufficient force of men for the purpose it could have been broken down in such a manner as to have rendered the men below reasonably safe from its falling. Appellee had a right to assume that appellant had performed this duty; Wylie and his men were not working at the piece that fell and caused the injury; there was nothing to warn appellee that there was immediate danger of its falling; he was in the discharge of his duty, exercising reasonable care for his own safety.    The injury did not result from an assumed risk, since the servant only assumes such obvious risks as remain after the master has discharged his

duty; he does not assume risks resulting from the negligence of his master; appellee was obeying the orders of the foreman who said if he had not obeyed he would have discharged him.    The judgment has a solid footing in the evidence and there being no error in the record the finding and judgment of the Circuit Court is affirmed.

*Affirmed.*