The Elgin, Joliet and Eastern Railway Company

*v.*

William H. Myers.

*Opinion filed February 21, 1907—Rehearing denied April 18, 1907.*

1. Master and servant—*servant assumes risk of usual dangers incident to his employment.* A servant assumes the risk of all the usual known dangers incident to his employment and takes upon himself the hazard of defective tools and machinery, if, after his employment, he knows of the defects but voluntarily continues in the employment without objection.

2. Same—*knowledge of a defect carries knowledge of obvious danger.* An experienced carpenter who has worked for a number of months with a certain circular saw knowing that a tooth thereof was gone, that the gauge did not extend beyond the center of the saw, that the gauge was set with a clearance of an eighth of an inch and that the saw was not equipped with a "splitter," is charged with knowledge of the danger of such defects and assumes the risks thereof.

3. Same—*what essential to entitle servant to rely upon master's assurance of safety.* It is only when a servant has been misled by

the assurance of his master, or some one standing in the master's place, that he can excuse himself from the asumption of risk in the use of an appliance which he knows is defective and the use thereof attended with danger.

4. SAME—*when servant is not acting under an order of the foreman.* The fact that several months before plaintiff's injury by a circular saw occurred he had complained to the foreman of the absence of a tooth therefrom, to which the foreman replied, "That cuts no figure with the saw at all; it is all right; go ahead; start it up;" after which the plaintiff used the saw almost daily, does not sustain plaintiff's contention that he was acting under the foreman's orders at the time of the injury.

5. SAME—*when question of assumed risk is raised in trial court.* An instruction in an action by a servant for personal injuries which informs the jury that if they find, from the evidence, the plaintiff knew of all the conditions by which the accident occurred and appreciated the dangers arising therefrom he could not recover, and that he was chargeable with knowledge of all conditions which he, in exercise of ordinary care, had equal opportunity with the master to know, raises the question of assumed risk in the trial court. ·

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding.

KNAPP, HAYNIE & CAMPBELL, J. L. O'DONNELL, and T. F. DONOVAN, for appellant.

DONAHOE, McNAUGHTON & McKEOWN, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case commenced in the circuit court of Will county by the appellee, against the appellant, to recover damages for the loss of two fingers, which were severed from the appellee's right hand while he was at work with a circular saw in the shop of the appellant. The jury returned a verdict in favor of the appellee for the sum of $4000, upon which the trial court rendered a judgment in favor of the appellee for $3000, after requiring a *remittitur*

of $1000 from the amount of the verdict, which judgment has been affirmed by the Appellate Court for the Second District, and a further appeal has been prosecuted to this court.

The case was tried upon a declaration containing nine counts. The first count alleged that the appellant, on December 1, 1903, was engaged in building and repairing locomotives and cars at its machine shop in the city of Joliet; that it was possessed of and was operating in its said shop a certain circular saw; that the appellee was in its employ and was engaged in sawing a certain stick of timber for the appellant upon said saw; that it was the duty of the appellant to keep said saw and its appliances in repair and in a safe condition; that it negligently allowed said saw and its appliances to become and remain out of repair and in an unsafe condition in this: that the gauge of said saw was not of sufficient length and did not extend far enough past said saw; that the appellant had notice of said defect but that the appellee did not have notice thereof, in consequence whereof, while the appellee was using said saw with all reasonable care for his own safety, said saw became bound in the stick of timber which appellee was sawing and thereby caused said stick of timber to jump violently backward, and the right hand of the appellee was thereby pushed across and upon the teeth of said saw, and two of the fingers of his right hand were severed and his hand otherwise injured, etc. The other counts of the declaration were substantially like the first, except they charged other defective conditions in the saw and its appliances. The second count averred that a tooth was allowed to be and remain out of the saw; the third, that the gauge of said saw was not properly adjusted; the fourth, that the saw was allowed to become and remain dished and warped; the fifth, that said saw and its appliances were allowed to become and remain out of repair and in an unsafe condition; the sixth, that the power which propelled said saw was allowed to vary greatly in strength,

whereby the speed of the saw was rendered unsteady and unreliable; the seventh, that the gauge of the saw was not properly fixed and adjusted and a tooth was allowed to be and remain out of said saw; the eighth, that no appliance was provided to hold the stick of timber being sawed down to the table of the saw; and the ninth, that the gauge of said saw was not properly fixed or adjusted, that a tooth was allowed to be and remain out of said saw, and no appliance was provided to hold the stick of timber which was being sawed down to the table of said saw.

The jury, under the direction of the court, found the appellant not guilty upon the fourth, sixth, eighth and ninth counts of the declaration. The appellant was therefore found guilty for the reasons that the gauge of the saw was not of sufficient length; a tooth was allowed to be and remain out of the saw; the gauge of the saw was not properly adjusted, and the saw and it appliances were allowed to become and remain out of repair and in an unsafe condition.

The machine upon which the appellee was injured consisted of a frame and table, and had connected therewith a saw, circular in form, which was attached to a revolving shaft which ran east and west beneath the table, which table contained a slot in its top through which the saw projected and revolved at the rate of about twelve hundred revolutions per minute. The top of the saw moved toward the operator, who stood at the north end of the table and fed the stick of timber being sawed to the saw by pushing it against the teeth of the saw. Upon the top of the table, and to the right of the saw, was a gauge which regulated the width of the strip cut from the stick of timber and held the timber in place while being sawed. This gauge was movable east or west upon the top of the table, which movement regulated the width of the severed strip, and by another movement it could be placed parallel with the saw or diverged from that line, so that the space between the gauge and the south part of the saw would be greater than the space between the gauge and

the saw on the side next to the operator, which space was called the "clearance," and was designed to prevent the saw from binding as it passed through the stick of timber. The saw was not always in use, but each carpenter in the shop adjusted the gauge to the size of the strip he desired to cut, selected a saw suitable to his purpose,—a number of saws differing in size being provided,—and used the saw as occasion required. The regulation of the clearance was under the control of the foreman, and the machine had not been changed in that particular during the twelve years it had been in use by the appellant prior to appellee's injury. The saw was about eighteen inches in diameter and its teeth were some two inches apart, one of which was broken out. The saw was also thicker at the outer edge than in the center. Its outer rim, by reason of its teeth being unevenly worn, did not form a perfect circle, and the saw was not equipped with a "splitter," which was a device placed upon the top of the table, south of the saw, to prevent the parts of the wood from coming together and pinching the saw, and the gauge only extended to the center of the saw and was set with a clearance of about one-eighth of an inch.

The appellee was about sixty years of age at the time of his injury, and the undisputed evidence shows he had worked at the carpenter trade since he was eighteen years of age, and had been in the employ of the appellant and worked in and about said shop for several years, and had worked as a carpenter in its shop since the May previous to his injury, and had frequently worked upon said machine and run said saw. On the day of the injury, from seven o'clock in the morning until the time he was injured, which was about ten o'clock in the forenoon, he was engaged in sawing sticks of timber upon said machine. He had also worked in other shops for a number of years where similar saws were in use. He had known for some months prior to his injury that a tooth was broken from the saw, that the gauge did not extend beyond the center of the saw, that the gauge was set

with a clearance, that the machine was not equipped with a splitter, and was familiar with the mechanism of said machine of which the saw formed a part, and had for a number of months operated said saw in the condition in which it was at the time he was injured. At the time of his injury another carpenter in the employ of appellant came to the machine where appellee was at work and desired to saw a strip from a stick of timber which he was preparing for use, and requested the appellee to permit him to use the saw. Appellee stepped to the east side of the machine and the other carpenter took a position north of the machine, turned on the power and commenced to saw a strip from the stick of timber which he had. After the end of the stick had passed beyond the south side of the saw the appellee took hold of the south end of the timber with his hands and bore down upon the timber to hold it from moving up and down upon the top of the table, and almost immediately his right hand was drawn upon the saw and the two fingers next to his right thumb upon that hand were severed from the hand and the next two fingers were cut to the bone on the inside. There was a disagreement between the appellee and his fellow-workman as to the cause of the injury. The appellee testified the timber was kicked north by the saw and his hand was drawn upon the saw, while his fellow-workman said the appellee placed his hand so near the saw that his glove was caught by its teeth and his hand was drawn upon the saw.

The evidence fairly tended to show that the saw and its appliances were defective in the particulars hereinbefore pointed out and that the appellant knew or ought to have known of such defects. Still, the appellee was not entitled to recover in this case unless he established that he did not know of said defects and did not have equal opportunities with appellant of knowing thereof at the time he was injured. (*Goldie* v. *Werner,* 151 Ill. 551; *Howe* v. *Medaris,* 183 id. 288; *Lake Erie and Western Railroad Co.* v. *Wilson,* 189 id. 89; *Armour* v. *Brazeau,* 191 id. 117; *Mont-*

*gomery Coal Co.* v. *Barringer,* 218 id. 327; *McCormick Harvesting Machine Co.* v. *Zakzewski,* 220 id. 522.) At the close of all of the evidence the appellant moved the court to exclude the evidence from the jury and to instruct the jury to return a verdict in its favor, which the court declined to do, which instruction preserved the question as a question of law for review in this court whether there is in the record any evidence which, with the inferences reasonably to be drawn therefrom, fairly tended to prove that the appellee did not know of the defects in the saw and its appliances complained of, and did not have equal opportunities with the appellant to know of such defects. *McCormick Harvesting Machine Co.* v. *Zakzewski, supra.*

It has been repeatedly held by this court that as between employer and employee the latter assumes all the usual known dangers incident to the employment, and that he also takes upon himself the hazard of the use of defective tools and machinery, if, after his employment, he knows of the defect but voluntarily continues in the employment without objection. (*Herdman-Harrison Milling Co.* v. *Spehr,* 145 Ill. 329.) In *Pennsylvania Co.* v. *Backes,* 133 Ill. 255, on page 262, it was said: "If a servant, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he cannot maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury.—*Simmons* v. *Chicago and Tomah Railroad Co.* 110 Ill. 340. See, also, *Stafford* v. *Chicago, Burlington and Quincy Railroad Co.* 114 Ill. 244, and *United States Rolling Stock Co.* v. *Wilder,* 116 id. 100." And in *East St. Louis Ice and Cold Storage Co.* v. *Crow,* 155 Ill. 74, it was held, if the injury was the result of obvious defects in the apparatus with which the servant is working, or from causes known to him or which he might have known in the exercise of due care, he cannot recover. It is apparent from the un-

disputed evidence found in this record that the appellee had full knowledge of the defects in the saw and its appliances which it is claimed caused his injury. It would therefore seem clear, under the foregoing authorities, there could be no recovery.

It is, however, urged that, although the appellee knew of the defective condition in the saw, he did not appreciate the danger to which he was exposed, and therefore that he may recover. If the danger is such that a person of ordinary intelligence would know what would naturally follow from the defective condition, and he has knowledge of the defective condition, knowledge of such condition carries knowledge of the danger and the risk is assumed. (*Illinois Steel Co.* v. *Mann,* 170 Ill. 200; *Lake Erie and Western Railroad Co.* v. *Wilson, supra; Webster Manf. Co.* v. *Nisbett,* 205 Ill. 273; *Gunning System* v. *Lapointe,* 212 id. 274; *Montgomery Coal Co.* v. *Barringer, supra.*) In *Chicago and Eastern Illinois Railroad Co.* v. *Heerey,* 203 Ill. 492, on page 497, it is said: "It is also the rule that an employee of sufficient age and experience is chargeable with knowledge of the ordinary conditions under which the business is conducted and its ordinary risks and hazards, and will be presumed to have notice of and to have assumed all such risks and hazards which to a person of his experience and understanding are, or ought to be, patent and obvious. If a defect is so plain and obvious to the senses that in the exercise of ordinary care the employee would discover it, and he continues in the employment without complaint and without any assurance by the master that the defect will be repaired or the danger removed, he assumes the risk arising from it." In the case at bar appellee had worked upon machines similar to the one upon which he was injured for a number of years and upon the particular machine for a number of months, and was fully aware of its condition and the defects therein, if such defects existed. We think, therefore, he assumed the risk of being injured from the use of said saw.

It is said, however, that the appellee was acting under an order of his foreman at the time of the injury. He testified that during the summer previous to his injury, while he was using this machine, the stick he was sawing was kicked backward by the saw with such violence that it knocked down a workman whom it struck, standing in the vicinity of the machine, and at that time he called the foreman's attention to the fact that a tooth was out of the saw, whereupon the foreman remarked to him: "That cuts no figure with the saw at all; it is all right; go ahead; start it up;" from which time he used the saw almost daily up to the time of his injury. One of the limitations upon the doctrine of assumed risk is, where the servant, by the order of the master or one standing in that relation, is directed to encounter a danger and he obeys the order, he does not assume the risk unless the danger is so great that an ordinarily prudent person would not have encountered it. In this case the claimed order was given a number of months before the injury took place, and was more the expression of an opinion of the foreman as to the safety of the saw than an assurance by him of its safety and an order to use the same, and we do not think it had the effect to relieve the appellee from the assumption of the risk of being injured from the use of said machine. Where the servant knows of a defect or what the danger is, he cannot be said to rely upon the assurance that the danger does not exist. It is only where the servant has been misled by the assurance of the master, or someone standing in the master's place, that he can excuse himself from the assumption of the risk on the ground that he has been assured by the master that there is no danger in the use of the appliance or piece of machinery which he knows, as a matter of fact, is defective and the use thereof attended with danger. (*Rohrabacher* v. *Woodward,* 82 N. W. Rep. 797; *Toomey* v. *Eureka Iron and Steel Works,* 89 Mich. 249; *Anderson* v. *Akeley Lumber Co.* 47 Minn. 128; *Reis* v. *Struck,* 23 Ky. Law, 1113; *Breckinridge & P. Syndi-*

*cate* v. *Murphy,* 18 id. 915; *Haas* v. *Balch,* 56 Fed. Rep. 984; *Showalter* v. *Fairbanks, Morse & Co.* 88 Wis. 376.) In *Rohrabacher* v. *Woodward, supra,* the plaintiff was working upon a wood machine. He called the attention of the defendant to the fact that it was a dangerous operation but was assured by the defendant that the work was entirely safe. His right to recover was denied upon the ground that he could not continue to operate a machine which he knew to be dangerous simply upon the assurance of his master that it was not, when he himself had complete knowledge of the danger arising from its operation.

It is urged that the appellant did not raise the question of assumed risk upon the trial and that the question was raised in the Appellate Court for the first time. By appellant's sixth instruction the jury were informed that if they found, from the evidence, that the plaintiff knew all of the conditions by which the accident occurred and appreciated the dangers arising therefrom then he could not recover, and that he was chargeable with knowledge of all the conditions which he, in the exercise of due care, had equal opportunity with the defendant to know. We think this instruction fairly raised the question of assumed risk, and that it can not be said that question was not raised in the trial court.

From a careful examination of this record we are of the opinion the appellee assumed the risk of being injured in the manner in which he was injured by continuing in the employ of the appellant without objection and without a promise on the part of the appellant to remedy the defects after he knew of the defective condition of said saw and its appliances, and that the trial court should have directed a verdict in favor of the appellant.

The judgments of the Appellate and circuit courts will be reversed and the cause remanded to the circuit court.

*Reversed and remanded.*

FARMER and VICKERS, JJ., took no part in the decision of this case.