## Royal Trust Company, Administrator, Defendant in Error, v. National Provision Company, Plaintiff in Error.

### Gen. No. 13,494.

1. ASSUMED RISK—*when doctrine of, applies.* The doctrine of assumed risk is applicable and precludes a recovery where it appears that the servant was injured through an agency which was one of the obvious dangers of his employment, the risk of which he knew and appreciated from practical experience.

2. ASSUMED RISK—*what does not preclude operation of doctrine of.* The operation of the doctrine of assumed risk to preclude a recovery is not affected by the fact that the servant is ordered to do a particular work, where the order does not include a direction

to do such work in a particular manner, the servant being left to his discretion as to the manner of doing the work; if he adopts one of several methods, one of which is safe and the other dangerous, and by pursuing the unsafe method adopted by him he is injured, he cannot recover.

3. CONTRIBUTORY NEGLIGENCE—*when appears as matter of law.* A servant is guilty of contributory negligence which will preclude a recovery from an injury resulting to him where without direction from his master he undertakes to perform work in a manner known by him to be perilous.

BAKER, P. J., dissenting.

Action in case for death caused by alleged wrongful act. Error to the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Reversed. Opinion filed March 6, 1908.

**Statement by the Court.** Plaintiff in error, National Provision Company, seeks by this writ of error to reverse a judgment recovered against it in the Superior Court by defendant in error for $4,000 in an action to recover damages for the death of Patrick Meegan.

On July 9, 1904, a part of the plant occupied and used by the Provision Company was destroyed by fire. Before the fire deceased had been employed by the Provision Company as a stationary engineer. About three weeks after the fire the deceased and three other workmen were employed by the Provision Company as common laborers in and about collecting and getting into marketable shape salvage remaining on the premises. September 1, 1904, as the evidence tends to show, these men were engaged in raising a safe lying on its back to an upright position. The safe was partly under a cross beam about eight feet above the ground, resting on two upright posts which were sunk some distance in the ground. The posts stood about eleven feet apart. The cross beam and the posts were twelve by twelve inches in size and had been slightly charred by the fire. The cross beam rested upon the ends of the posts, and was nailed to them by large spikes. The safe was five feet high and three and a half feet in its other dimensions, and weighed about two tons. The cross beam ran north and south. The safe

was about midway between the posts with its top to the west
of the north and south beam.

While the deceased and the other men were engaged in
other work Bernard Brennan, secretary of the plaintiff in
error, told Meegan, the deceased, who was foreman of the
gang, to raise the safe and stand it upon its feet.   Brennan
left the place, and Meegan and his helpers went to the safe
and attempted to raise it by means of a rope around the
safe and a block and tackle made fast to the cross beam.
The work proceeded for a short time under the direction of
Meegan, and they had raised the top of the safe six inches
or more when it was discovered that the south post was not
firm and swaying.   Meegan and his helpers saw that the
post was not safe, and put a support under the top of the
safe to hold it in the position to which they had raised it,
removed the block and tackle and returned to other work.

Subsequently Brennan returned and said to Meegan in
substance, I told you I wanted that safe raised upon its feet;
it is worth no money to me lying out there; and Meegan then
explained that he had made the attempt but that the timbers
were not firm enough, and that the work was dangerous; and
that Brennan, according to the testimony of defendant in
error, then went out to the safe with Meegan and kicked
the post and expressed the opinion that the timbers were
strong enough to raise the safe, and then left the premises.
This is denied by Brennan, who says that he never told the
men to use block and tackle, but to get pipes and use
them for levers to raise the safe.

It appears that Meegan then directed his helpers to join
him in another attempt to raise the safe.   Some ten inch
spikes were procured and the cross beam was spiked on to
the posts, and a brace against the south post was put up; the
block and tackle was again adjusted.   Meegan stood under
the beam pulling with one hand on the rope and with his
left hand resting on the top of the safe.   When the safe
was raised nearly high enough to enable them to put it on
its feet, the south end of the cross beam came off the south

post and falling struck Meegan's left hand, inflicting the injury from the results of which it is claimed he died.

On the trial of the case the jury returned a verdict finding the plaintiff in error guilty and assessing damages at $4,000; and judgment was rendered on the verdict.

JOHN E. KEHOE and MORRISON & BROWN, for plaintiff in error.

KICKHAM SCANLAN, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

If Meegan, the deceased, assumed the risk, or if he was guilty of contributory negligence, no recovery can be had. These questions we shall consider in the order stated.

The evidence shows that the deceased was a man of mature years. He had been an engineer about fourteen years, and had worked for plaintiff in error two years. He was familiar, therefore, with the laws of mechanics operating in the work he was doing, and with the appliances which he was using, and also with the premises where he was working. It appears from the testimony that Brennan was not present at either attempt to raise the safe. It is not claimed that he gave any specific order for the use of the posts and cross beam and block and tackle. His order in each case was to raise the safe on its feet.

Upon a review of the evidence offered by defendant in error we think that all reasonable minds must come to the conclusion that Patrick Meegan, the deceased, had actual and positive knowledge, derived from personal observation and experience, not only of all the conditions existing, but of the precise dangerous feature which afterwards resulted in the injury. He had opportunities not only equal, but superior to those of plaintiff in error, to know and appreciate all the conditions, circumstances and dangers surrounding the work, and inherent in the method which he adopted of doing the work. The testimony of Burns, Kelly and Meegan leaves no doubt in the mind that the deceased fully

appreciated the danger of using the posts and cross beam in the manner in which they were used, and that he expressed his apprehension at the conclusion of the first effort to raise the safe, and ordered his men to stop the work because of the danger. This definite knowledge on his part of the peril and hazard of that method of procedure was the result, not of mere opinion or theory, but of an actual test which developed the particular weakness in the posts and cross beam. Meegan's knowledge is further demonstrated by his efforts to strengthen the structure before using it as an appliance the second time by means of a brace to support the south post, and by spiking the cross beam upon the posts. Plaintiff in error was not present and had no knowledge of the fact or the manner of this bracing and spiking. Meegan assumed to thus strengthen what he knew to be a weak structure in his own way, and upon his own judgment as to its sufficiency, without consultation with, advice from, or direction of plaintiff in error. We are compelled by these undisputed facts and obvious considerations to the conclusion that Meegan had full and complete knowledge of all the dangers attendant upon and resulting from the use of the posts and cross beam as an appliance for raising the safe by the method adopted. Having such knowledge, Meegan, in our opinion, assumed the risk. This conclusion, we think, is fully sustained by Elgin, Joliet & Eastern Ry. Co. v. Myers, 226 Ill., 358; Republic Iron & Steel Co. v. Lee, 227 *id.*, 246, and cases there cited.

But, it is urged that when Brennan's attention was called to the weakness of the posts and cross beam he kicked the south post and said to deceased, "That is strong enough to lift twice as much; go and get it up; it is worth no money lying there," and this was an assurance by the master, plaintiff in error, that the danger did not exist, which deceased had a right to rely upon, and brings the case within an exception to the doctrine of assumed risk. This exception exists where a servant is ordered by his master to do certain work which is attended with danger of which he is not fully cognizant, and he relies upon the order to do the

work as an assurance that he may safely perform the task. What we have said above, and the authorities cited, dispose of this contention. See also I. C. R. R. Co. v. Fitzpatrick, 227 Ill., 478; Gunning System v. La Pointe, 212 *id.*, 274, 278; C. & E. I. R. R. Co. v. Heerey, 203 *id.*, 492; Montgomery Coal Co. v. Barringer, 218 *id.*, 327; McCormick H. Machine Co. v. Zakzewski, 220 *id.*, 522.

In Illinois Central R. R. Co. v. Swift, 213 Ill., 307, it is said: "Where, however, the employee is not directed to do the work in a specific manner, but is given a general order to perform the task and is himself left to use his own discretion as to the manner in which the work shall be done, and there exists a safe way and a dangerous way, which are equally open to him, if he selects the unsafe method through heedlessness or because it involves less exertion on his part, and injury to his person results, he cannot recover. · Pennsylvania Co: v. Lynch, 90 Ill., 333; Illinois Central Railroad Co. v. Sporleder, 199 *id.*, 184."

Brennan testified, and his testimony is necessarily undisputed, that when he talked to the deceased about raising the safe, the deceased said he did not think he could raise it with a block and tackle, and the witness replied that he had never thought of having it done in that way, and said: "I expected you would raise that with a lever." The deceased then said: "You go ahead; I will attend to that; leave it to me. I thought that would be the easiest way and the quickest way and I told him that. I never told him to use a block and tackle."

This testimony, in connection with the testimony of the witnesses for defendant in error, tends to show, we think, that the plaintiff in error did not direct the work of raising the safe to be done in a specific manner, but gave a general order to perform it and left the deceased to use his own discretion as to the particular manner of doing it. Deceased adopted the method which in the nature of things caused the beam to come down. As said in Karr Supply Co. v. Kroening, 167 Ill., 560, in holding the plaintiff guilty of contributory negligence: "Defendant, in furnish-

ing help, was not bound to act upon the assumption that its servants would undertake, without any direction as to how the work should be done, to lower the tank by the most inconvenient and hazardous method. It had a right to assume that they would use a reasonable and proper method when left to make their own selection.  *  *  *  It is a long established rule of law, founded in natural justice, that 'the mere relation of master and servant can never imply an obligation on the part of the master to take more care of a servant than he may reasonably be expected to take of himself.' (Priestly v. Fowler, 3 M. & W., 1.)  *  *  *  There was no coercion whatever, but the servants of defendant, by their own choice, did the work in the most difficult and hazardous manner. The law does not impose any such hardship upon a master as to hold him liable for the consequences of their choice without his direction."

There is another respect in which deceased may be said to have been guilty of contributory negligence. Shortly before the accident deceased had declared the work was unsafe, and that the beam would pull off. Why did he take a position of danger and place his hand where if the beam did come off the post, it was liable to fall on his hand? The only answer given in the evidence is that he put it there to steady the safe. This is manifestly no answer.

We think the instruction to find the defendant not guilty, requested at the close of the evidence, should have been given.

The judgment is reversed with a finding of fact.

, *Reversed with finding of fact.*

MR. PRESIDING JUSTICE BAKER dissenting.