John Mohr & Sons v. Martewicz.

---

## John Mohr & Sons v. Anton Martewicz.

### Gen. No. 13,636.

1. MASTER AND SERVANT—*when doctrine of assumed risk applies.* A servant is held to have assumed all those obvious risks which are incidental to his regular employment.

2. MASTER AND SERVANT—*when former need not give warning of danger.* A master is not bound at his peril to warn his servant of a danger equally obvious to both.

3. INSTRUCTIONS—*when must not omit reference to issue.* An instruction which directs a verdict of not guilty in the event of finding certain facts must not omit ingredients essential to justify the rendition of such a verdict.

Action in case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. BEN M. SMITH, Judge, presiding. Heard in this court at the March term, 1907. Reversed with finding of fact. Opinion filed March 9, 1908.

**Statement by the Court.** The action is case for personal injuries. A trial in the Superior Court with a jury resulted in a verdict for $10,000, upon which the court entered a judgment after overruling motions for a new trial and in arrest of judgment.

The errors assigned and argued are that it was error to refuse the peremptory instruction requested to be given to the jury to find a verdict for defendant, that the verdict

and judgment are contrary to the manifest weight of the evidence, and that the court erred in giving certain instructions tendered by plaintiff and in refusing to give others tendered by defendant.

The parties will be designated in this opinion as in the trial court. The declaration consists of three counts. By the first count plaintiff, after averring that he had worked for defendant at the time of the accident for three years, in its boiler factory, in which it maintained a crane with an upright part 20 feet high, from which there was extended in a horizontal direction, at the height of about 14 feet, a beam or arm about 12 feet long, avers that on December 10, 1904, he was ordered by defendant to ascend the crane to the height of the beam and to go along said beam toward its further end for the purpose of ascertaining the length of a pipe which was to be put in position five feet above the beam, where it moved horizontally about the upright of the crane. It is then alleged that there was danger attendant upon the doing of that work because when he was along the beam outward from the upright, the beam was liable to move in a horizontal direction, which motion was liable to precipitate him to the ground below; all of which defendant knew or was chargeable with knowing in the exercise of ordinary care. It is then averred that plaintiff neither knew nor in the exercise of ordinary care could have known of these dangers, and that therefore it was the duty of the defendant to show him the dangers encountered in the doing of the work, and especially the danger in proceeding along the beam. The negligence charged against defendant in this first count is that it failed and omitted to point out and discover to the plaintiff the fact that the beam was liable to move horizontally and the danger attending such motion, and failed to warn plaintiff that there was danger attending the work he was so ordered to do. That by the moving of the beam while he was so upon it, in the exercise of due care for his safety, he fell to the ground 14 feet below, and was injured.

John Mohr & Sons v. Martewicz.

The second count, after the inducement, alleges that plaintiff at the time of the accident was a helper to a pipe fitter, whose orders he was directed by defendant to obey; that defendant either knew or was chargeable with knowing that if plaintiff proceeded upon the beam outward toward its end, there was danger of the beam moving horizontally, resulting in pitching him down upon the ground below, of which danger plaintiff was unaware, etc. Negligence is then charged in that defendant "negligently, through the directions of said pipe fitter, ordered and commanded the plaintiff to proceed horizontally upon said beam toward and to the outer end thereof"; that while he was obeying the order of the pipe fitter, in the exercise of due care, the beam, without his fault, moved horizontally, causing him to fall to the ground.

The third count grounds the negligence of defendant in not providing a reasonably safe place for plaintiff to work, but on the contrary furnished a dangerous place, in that the beam, being unfastened and movable, was liable to move in the manner before alleged, and that while plaintiff was moving outward upon the beam he could not be in a safe position, but was obliged to crawl along the beam upon his hands and knees, and consequently could not prevent his falling in the event the beam moved sideways; that such dangers were actually known or might have been known to defendant if it had exercised reasonable care; that such dangers were neither obvious nor known to plaintiff, and could not have been known to him in the exercise of due diligence; that while proceeding along the beam with due care, it suddenly moved, causing him to fall off, injuring him.

To this declaration defendant pleaded the general issue.

Plaintiff was a laborer who had been in the employ of defendant three years at the time of receiving the injuries to recover compensation for which this suit was brought. During the first two years or more of his employment he helped the man who punched holes in iron plates; did any-

thing he told him to do. He testified that he was a common helper to most everybody in the shop. Six months before the time of the accident he went into the machinists' shop to work as a helper. He helped any of the machinists who called for his assistance. He was under their orders. On the morning of the accident he was working with Meyer, a "pipe fitter," with whom he had been working something less than a month. Meyer testified that plaintiff helped him from the first time he, Meyer, went into the machinists' shop; that day after day they put up pipes in different parts of the building. The master mechanic, one Luedtke, directed plaintiff to help Meyer, and when he and plaintiff worked together he did whatever Meyer told him to do. Plaintiff knew of the crane and its situation during all the time of his employment, but while he worked as a punch press helper he did not use it. After quitting as punch press helper he went into the machine shop, where was located the crane from the beam of which he fell. During the six months prior to the accident he worked with the crane very often, nearly every day; would use it from one to ten times daily; when working away from the crane did not use it. Part of his duties were to carry things to the machinists; when things were light he carried them by hand or put them on a truck; when heavy he used the crane for that purpose; knew how to work the crane and its method of operation; knew the way the crane swung when moved; knew that the beam moved easily. When he used the crane would pull a chain so that it would catch, and then pull the chain again and get it wherever he wanted it. The chain was attached to the crane more or less in the center. The beam is 16 feet from the ground and 13½ inches wide on top. The day before the accident a box was fastened on the platform above the crane. Meyer, the pipe fitter, and plaintiff worked on the box before it was put up; they put an elbow or connection onto the box so as to connect it with a pipe. After the box was put up Meyer went out on the beam and put some tin on the box;

he went out onto the beam on his hands and knees, got hold of the box and stood up; he went out that way so that he should not fall. Meyer wanted a couple of pieces of wire, and plaintiff got them for him, climbed up to the beam on the ladder, from which he handed them to Meyer. Meyer was six or seven feet from plaintiff out on the beam when he handed him the wire. Plaintiff, the morning after Meyer was on the beam, was standing on the floor with Meyer, when Meyer asked him to go up on the beam and make a measurement to ascertain the length of pipe needed. When he got up to the beam Meyer went up the ladder after him. Plaintiff took a tape line with him to make the measurements. When he was out on the beam Meyer was sitting against the column with his hand on the crane holding one end of the tape line. Plaintiff got the tape line up to the elbow with his hands, when the crane turned, how he does not know, and he fell off the beam to the floor below. Plaintiff was asked this question:

"Q. Before you fell did you move the crane yourself at all?" He answered: "I could not move it; I did not go up there with the intention of falling down."

He further testified that he did not hear Meyer say anything to him about the crane being moved, nor could he tell how long he was on the crane before he fell. That he was not on the beam at any time before the day he fell from it. On cross-examination plaintiff was asked: "Q. Did you move the crane when you went up or after you got up?" to which he replied, "Why should I move the crane? So as to fall down?"

Meyer testified that the crane arm with reference to the union (the place where the measurements were to be made) was about six inches; that would be twelve inches away from the union; with the plaintiff sitting on the beam, or a man the size of the plaintiff sitting on the beam as the beam was located at that time, if he was sitting at the end of the crane, that is, about fourteen inches away from the end of the crane, he would strike the pan with his head.

"I mean, as he sat there his head would touch the pan."
As the crane was actually standing there at this time and
at the point where the plaintiff would have to make the
measurement, where he was, it was not necessary for him
to stand on his feet to reach this joint or union. As the
crane stood there at this time the plaintiff could have sat
on the crane there and reached the joint or union. Plaintiff
pushed the crane on the first movement as far as it went to
the bull riveting machine; that would be about a foot; then
he turned right around and facing north he pushed the
crane south and fell down. I did not move the crane while
he was out there. I have no way of moving it. On cross-
examination this same witness testified to the effect that the
post never moves and the ladder never moves. The arm—
beam—is fastened into the post with a pin holding it on top;
there is a bracket with a hole drilled to a certain size, and
that pin goes in there, and also down below is a bracket,
one on top and one on the bottom, where the brace is.
"When I went up there I climbed out on my hands and
knees, and when I got clear to the end I sat down on the
crane and located where it was, about, by looking. I didn't
measure. I didn't reach up above, didn't have to that day;
and after I located by looking I crawled back on the arm
of the crane and went down to the ground where Martewicz
was."

CALHOUN, LYFORD & SHEEAN, for appellant; ROBERT J.
SLATER, of counsel.

CYRUS J. WOOD and STEPHEN JANOWICZ, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion
of the court.

There is neither evidence nor contention that the crane,
its arm or beam, from which plaintiff fell, or any of its
mechanism, was out of repair, improperly or unsafely con-
structed, or that it was not adapted to the purposes for which

John Mohr & Sons v. Martewicz.

it was used, or that there was anything unsafe about it or its operation when used and operated with ordinary care. It was not a complicated piece of mechanism.    Its method and manner of operation were known to plaintiff, who was admittedly familiar with the crane, its appendages, uses and operations.    The attitude of counsel for plaintiff and their argument in support of it narrows materially the scope of our discussion in reaching a conclusion and decision of the case.

Counsel for plaintiff say on page 15 of their brief, "With regard to the *res ipsa loquitur* doctrine and the cases cited on that subject by opposing counsel, we are unable to see their relevancy.    This is not a *res ipsa loquitur* case.    It is an 'order' case.    The plaintiff was doing what he was told to do by his 'boss.' "

Plaintiff was a laborer, styled a helper, in defendant's shop.    His employment extended over a period of three years.    In whatever department he worked, he was working under the order of the several mechanics to whom he was a helper.    At the time of the accident, and for a little time previous to it, he had been helping the pipe fitter, Meyer, who in giving him orders about his work was at such times his "boss," as that word is generally understood in the vernacular of this country, and in giving of such orders Meyer stood as the representative of defendant.    Counsel argue that "if appellant put an incompetent man in a place of authority it must bear the consequences of its acts and his acts.    If Meyer was negligent, it is negligence for which appellant is responsible."    We find no support for this contention in the testimony, or anything that will justify the indulgence of an inference that Meyer was either incompetent or negligent.    In fact the testimony is strongly susceptible to the very opposite interpretation.    He was, so far as the evidence shows, a competent workman, and in his order to plaintiff to go upon the beam with the tape line, was not guilty of negligence.    Neither is there any evidence in the record that Meyer did any act, or gave any order for

the doing of any act which caused the beam to move, which movement resulted in plaintiff's falling. Nor was the moving of the beam caused by the action of any other employee of defendant, so far as the record discloses. From the evidence of Meyer it would seem that the moving of the beam was attributable to an act of plaintiff himself. He testified: Plaintiff pushed the crane on that first movement as far as it went to the bull riveting machine; that would be about a foot; then he turned right around and facing north he pushed the crane south and fell down. At the time plaintiff fell he was standing on the beam. Meyer testified that it was not necessary for him to stand on his feet to reach the joint or union from which the measurements were to be taken. As the crane stood plaintiff could have reached the joint while sitting on the beam. Nowhere in the record are these facts refuted. The indisputable evidence is to the purport that plaintiff was well-informed about the working of the crane. It does not appear that Meyer had any information of any material character in relation to it and its working not possessed by plaintiff. Plaintiff had worked with it himself numerous times; he had observed its operation by others; he had seen Meyer and the "sailors" work on the beam before the day of the accident. There is naught that we can find in the evidence leading us to the conclusion that the order given by Meyer to the plaintiff to work upon the beam was extraordinary or fraught with dangers unknown to plaintiff, within the knowledge of Meyer, or that he was chargeable with knowing in the exercise of reasonable care. It also is quite clear from the evidence that the crane was simple in the method of its operation, and that such method was obvious to any unskilled laborer brought in constant contact with it, as plaintiff undeniably was. There was no suggestion of danger in plaintiff's going to work upon the beam by himself or with anyone else. From the nature of his employment and the work he was constantly engaged in doing, this work was an incident of his employment and a part of his regular work. He entered upon it without protest or suggestion of danger, which, if any there was, he

must be assumed to have had knowledge of, and therefrom to have assumed the risk attendant upon doing the work. Meyer, in these circumstances, was not required to warn plaintiff of danger as obvious to him as to Meyer. We think the duty of defendant, under the facts in evidence, circumscribed by the doctrine laid down in section 237, Labatt on Master and Servant: "The absence of any obligation to instruct a servant who is proved by direct evidence actually to have had as complete knowledge of the danger and of the appropriate means of avoiding it as the master could have imparted to him, is too obvious to admit of controversy. Manifestly it cannot be 'the duty of the master to admonish the servant to be careful, when the servant well knows his danger and the importance of using care to avoid it. It is the duty of the servant to exercise care proportionate to the danger of his situation as he understands it, and if he fails to do so, the fault is his, and not his master's.' " Call v. Chicago & No. R. R., 71 Wis., 114; M. & O. R. Co. v. Vallowe, 214 Ill., 127.

This court said in C. & A. R. Co. v. Pettigrew, 82 Ill. App., 33: "It is the settled and elementary law that it is unnecessary that a servant should be warned of every possible manner in which injury may occur to him, or of risks that are as obvious to him as to the master. The master is not required to point out dangers which are as readily discernible by the servant himself by the use of ordinary care, with such knowledge, experience and judgment as the servant actually possesses, or as the master is justified in believing him to possess." Reynolds v. Grace, 115 *ibid.*, 473; E., J. & E. Ry. v. Myers, 226 Ill., 358; C. & E. I. R. R. v. Heerey, 203 *ibid.*, 493; McCormick H. M. Co. v. Zakzewski, 220 *ibid.*, 522.

The master is not liable to the servant for injuries sustained in hazardous employment. The liability of the master depends entirely upon the nature of the employment of the servant and the work he has employed his servant to do. If the master puts the servant to work at any unaccustomed task, which is attended with more dangers than the work he

was employed to do, and fails to inform such servant of the
dangers to be encountered and the perils to be met, and the
way to avoid the injury, then the master is liable to such
servant in the event of his being injured.  But this is not
the rule or doctrine to be applied in all cases regardless of
the known dangers and hazards to be met, arising from the
very nature of the employment.  Men employed to work
in and about highly explosive substances assume the risk
of the perils encountered, so obvious to all, unless an injury
be suffered directly traceable to some act of negligence of
the master, either of omission or commission, proximately
causing the injury.  Persons thus engaged and others in
like perilous employment do all their work under orders;
yet that of itself does not make the master liable for every
accident attendant upon the execution of such orders.  The
risks naturally to be encountered and consequently to be
expected by workmen in such employment the law holds to
be assumed upon taking and entering upon such employ-
ment.  We do not think that Springfield Consolidated Boiler
Co. v. Parks, 222 Ill., 355, when considered in the light of
the facts to which the reasoning of the court and the law
was applied in that case, is in conflict with the doctrine
here announced.  The cases which hold the employer liable
where the workman acts under an order in doing the work
at which he was injured, contain some of these elements.
That the employer was first guilty of negligence in respect
to appliances, places to work, or in failing to warn of dan-
gers unknown to the workman, or where the order is given
to do work more hazardous than that which he was employed
to do and out of the line of his employment, or where the
order being peremptorily given, for immediate action, al-
lowed the workman no time to weigh the probable result to
him in obeying, where the necessity for immediate action is
so urgent that prompt obedience necessitates reliance for
safety upon the assumed knowledge of the party giving the
order that it can be safely done.  None of these conditions
enter as elements in either the giving or execution of the
order which resulted in plaintiff's injuries.  We cannot co-

John Mohr & Sons v. Martewicz.

incide with the somewhat novel argument of counsel for defendant that the doctrine promulgated in the case of Wells v. Kapaczynski, 218 Ill., 149, is not the law of this forum because three judges, now members of the Supreme Court, joined in a dissenting opinion upon differing legal theories, the majority members of the court joining in the deciding opinion being no longer upon the bench of that tribunal, and that therefore the dissenting opinion becomes the law of the forum. In the first place, the deciding opinion is the law of the court until expressly overruled in a case subsequently decided by the court, and until then it is binding on all the courts of the State. Secondly, it would be an unheard-of method to adopt, to make a new legal precedent upon the unwarranted assumption that the learned judges who have succeeded to the places vacated by their predecessors are sure to agree with the views of the dissenting opinion, rather than to concur in the doctrine of the deciding opinion. Law is not culled from the realm of speculation; it rests for its authority upon much more tangible and firmly fixed principles.

We do not, however, regard the Wells case as being in conflict with the rule announced in this opinion. All the court there did was to hold that the findings of fact by this court were not subject to further review in the Supreme Court, and were binding upon it. This court having found as an ultimate fact that the defendant negligently ordered the plaintiff to perform certain work, in obeying which plaintiff was injured, and plaintiff being without fault, the Supreme Court held that the doctrine of assumed risk had no application. In what the negligence of the defendant in the Wells case consisted is immaterial. It may have, for aught the Supreme Court could search to find to the contrary, have rested in a hurry order obeyed necessarily without deliberation on the part of the workman. In such a case the doctrine of assumed risk could not be successfully. invoked as a defense; it would have no application. The ultimate fact in the Wells case being contrary to the ultimate fact here found, neither its reasoning nor doctrine is

pertinent to this decision. Neither do we regard the case of E., J. & E. Ry. Co. v. Myers, 226 Ill., 358, as being in conflict with the Wells case. Both cases are entirely variant in all their controlling facts, necessitating the application of different legal principles to each case, which, when fairly analyzed and distinguished, will not be found to be either in conflict or contradiction to each other. We think the verdict and the judgment thereon are clearly contrary to the manifest weight and probative force of the evidence, as the evidence fails to sustain the charge that the order given was negligent or the work to be performed extra hazardous, or that the order given was a hurry or a peremptory one, out of the line of his employment. In this condition of the evidence a question of law was raised by the motion of the defendant to instruct the jury to find a verdict in its favor. If this evidence, with all the inferences which could reasonably be indulged, was clearly insufficient to sustain the charge of negligence alleged against defendant in any count of the declaration, it was the duty of the court to allow the motion and instruct the jury as requested. The peremptory instruction asked by defendant at the close of all the proofs should have been given.

Instruction A given by the court at the instance of plaintiff was erroneous in failing to inform the jury that if the order given to plaintiff was to do work which he ordinarily did and was employed to do, then he assumed the risk and could not recover. The instruction was misleading and authorized a verdict on the doctrine of the liability of the defendant to compensate plaintiff for injuries sustained while working in a dangerous place, regardless of the fact, if it was a fact, that plaintiff hired himself to work in a place fraught with danger, and that he thereby assumed the risks obvious to him in the exercise of due care. Ills. Iron & Metal Co. v. Weber, 196 Ill., 526.

The court properly refused to give instructions 17, 18 and 19, proffered by defendant. They omit ingredients essential to justify the jury in rendering a verdict of not guilty, and furthermore the jury, by the instructions given

at defendant's request, were fairly instructed upon the theories defectively set forth in defendant's instructions refused.

For the errors indicated the judgment of the Superior Court is reversed with a finding of fact.

*Reversed with finding of fact.*