# Adolph Weise, Appellee, v. Conrad Seipp Brewing Company, Appellant.

## Gen. No. 17,879.

1. MASTER AND SERVANT—*defective machinery.* In an action by a servant to recover for injury from defective machinery, he must prove, first, that the appliance was defective; second, that the master had notice thereof or knowledge, or ought to have had; and third, that the servant did not know of the defect and had not equal means of knowing with the master.

2. MASTER AND SERVANT—*duty of master the same with regard to place or appliance.* The duty and liability of a master to his servant are the same with regard to the place of work and the appliance with which the work is done.

3. MASTER AND SERVANT—*where knowledge of defective appliance or unsafe place is sufficient.* In an action by a servant for personal injury, where the defect in the appliance or place is known to the servant, it is not necessary to relieve the master from liability that it appear that the servant had knowledge of the danger, where the danger is obvious to a man of ordinary intelligence.

4. MASTER AND SERVANT—*where servant assumes risk of obvious dangers though master violates duty.* While the master's duty requires him to furnish the servant a place ordinarily safe in which to work and machinery which is ordinarily safe, and the servant has a right to assume that he has performed this duty, yet, even if the master fails in such duty and there are, to the knowledge of the servant, defects in such machinery which render its use hazardous, he assumes the hazard.

5. MASTER AND SERVANT—*servant assumes obvious and apparent dangers.* In an action by a brewery employe for injury received while shoveling malt into a conveyor, where the danger of standing near the conveyor is obvious, the risk will be held to be assumed.

6. MASTER AND SERVANT—*general order not sufficient to relieve servant from assumption of risk.* In an action by an employe in a brewery for personal injury, an order to "go down there and shove the malt right into the conveyor" is a mere direction to go to work as usual, and does not amount to an assurance of safety which operates to relieve him of assumption of risk.

Appeal from the Superior Court of Cook county; the Hon. CHARLES A. McDONALD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed with finding of fact. Opinion filed March 6, 1913.

Weise v. Conrad Seipp Brewing Co., 178 Ill. App. 44.

**Statement by the Court.** In this case a judgment for $2,500 was entered against appellant for damages for personal injuries sustained by appellee while he was in the employ of appellant. In substance, the several counts of the declaration charge negligence on the part of appellant in failing to use reasonable care to provide appellee with a reasonably safe place to work and reasonably safe appliances and instrumentalities with which to work, and also that appellant negligently ordered appellee to work in a dangerous place, where he was exposed to perils not ordinarily incident to his employment and extra-hazardous, which were known to appellant and unknown to appellee. Four of the counts also allege a violation of a city ordinance, but no such ordinance was introduced in evidence.

The following facts are shown by a clear preponderance of the evidence. Appellant operates a brewery in a building seven stories high, the basement and first floor of which are used as part of its "malt house." In the basement is a room 98 feet in length from east to west and 54 feet wide from north to south. The west 90 feet of this room is divided into three rectangular bins, with aisles between them, formed by partitions, three and a half feet in height. These are called "malt bins," and each is capable of holding 1,500 to 1,800 bushels of malt. The east eight feet of the room is an open space, in the cement floor of which, some 16 or 17 inches from the east wall of the room and parallel therewith, is a trough 14 inches wide, and about the same depth, extending the whole width of the room from north to south, except about seven feet at the north end. In this trough is a spiral or screw conveyor of steel, and just above it, at the top of the trough and flush with the basement floor, is an iron grating resembling a ladder with rungs four and one-half inches apart. When the conveyor is not running, thin iron plates are laid upon the grating, covering it completely; but when the con-

veyor is in operation, a section of these iron plates is removed, leaving that part of the conveyor exposed and uncovered, except by the iron grating. In the northeast corner of the room, a small flight of stairs leads from the basement floor to a door opening into another room, the floor of which is four and a half feet higher than the basement floor. The distance from the foot of the stairs to the bearings of the conveyor, in the north end of the trough, is 18 or 19 inches, and from the foot of the stairs to the first spiral of the conveyor is two feet and eight inches. Near the ceiling, in the middle of the open space at the east end of the room, is an arrangement of shafting, pulleys and a winding drum, and attached to the east wall, a couple of feet above the floor and about opposite the center line of each of the malt bins, is a block and pulley, through which a rope passes from the winding drum to a shovel or scraper used to scrape the malt from the bins into the conveyor. On the floor above the basement are three other bins, similar to those in the basement. The barley used in the process of making malt is first cleaned and soaked in water in one of the upper floors of the building, and is then passed through a pipe or chute into the bins above described. There it is kept for a week at a temperature which causes it to sprout. Then it is transferred to the conveyor, which carries it along in the trough to another department of the brewery. In doing this work in appellant's brewery, six men constituted a "gang." Two of these worked on the upper floors, and four in the basement. Of the latter, one stood near the winding drum and operated the machinery which controlled the movement of the scraper forward and backward, another handled the scraper, a third handled the slack rope attached to it and helped to pull it back, and the fourth stood near the uncovered section of the conveyor and, with an instrument resembling a garden fork, tore apart the matted malt and shoveled and sifted into the conveyor such of the

Weise v. Conrad Seipp Brewing Co., 178 Ill. App. 44.

malt as did not readily fall through the iron grating. It took about an hour and a half to empty one of the bins in this manner, and one of such bins was thus emptied each working day so long as the barley held out. All the men in the "gang" except the one who operated the machinery shifted their positions frequently, so that each in turn did the work which one of the others had done a day or two before.

In September, 1906, appellee, then about twenty-five years of age, entered the employ of appellant, intending to learn the trade of a brewer and malster. He was first put to work in the "wash house." Then in succession, he worked in the "filling room," the "fermenting room," the "chips room," and finally, about a year after he first began, in the malt house. For three weeks in September and October, 1907, he worked as one of the "gang" above described, during which time he took his turn at the different positions above mentioned and did the work of shoveling malt into the conveyor at least twice. Apparently the work in the malt house then ceased for awhile for lack of barley, but was resumed in the latter part of January, 1908. Appellee again took his place in the "gang," and at least once during the following week, he did the work of shoveling the malt into the conveyor, as it was scraped out of the bins. He claimed, however, that he only did this work opposite the middle and south bins, and never at the north bin. On the morning of the sixth day, he began work at seven o'clock, upon one of the upper floors, "getting the grain down." When that was finished, about 7:50 A. M., he, with the other men, started for the basement. He testified that he first went to a toilet room, and while returning to the basement he met the foreman, who told him to "go down there and shove that malt right into the conveyor," to which he made no reply. He testified: "I knew what that work was; I ought to know." He then went down the stairs leading into the basement, and saw that the other men had begun to empty the malt out of the north bin, and that they

had already scraped out part of the malt from that
bin. This malt was piled two or three feet high at the
foot of the stairs. He found a fork standing at the
head of the stairs and at once began shoveling the
malt into the conveyor, standing upon the pile of
malt for that purpose. . He testified that he did not
see or know just where the north end of the conveyor
was; that the scraper kept bringing up more malt and
he kept shoveling it into the conveyor, moving around,
as occasion required, to keep out of the way of the
scraper. He continued at this work for about twenty
minutes, when his foot slipped and went down between
the bars of the grating into the conveyor. Another
witness testified that at the time of the accident, ap-
pellee had his left foot on the space between the con-
veyor and the east wall, and his right foot on the
space north of the north end of the conveyor near the
stairs. He received injuries which required his left
leg to be amputated two or three inches below the
knee.

Frank M. Cox and R. J. Fellingham, for appellant.

J. S. Reynolds, for appellee.

Mr. Justice Fitch delivered the opinion of the
court.

In Goldie v. Werner, 151 Ill. 551, 556, it is said:
"The rule of law in respect to the burden of proof
that is imposed upon a servant in a suit against his
master, for injuries resulting from defective machin-
ery, etc., is thus stated in section 414 of Wood on the
Law of Master and Servant: 'The servant, in order
to recover for defects in the appliances of the business,
is called upon to establish three propositions: 1st,
that the appliance was defective; 2d, that the master
had notice thereof, or knowledge, or ought to have
had; 3d, that the servant did not know of the defect,
and had not equal means of knowing with the mas-
ter.' "

The rule thus announced has been followed in many subsequent cases, among which are the following: Chicago & A. R. Co. v. Scanlan, 170 Ill. 106; Edward Hines Lumber Co. v. Ligas, 172 Ill. 315, 320; Howe v. Medaris, 183 Ill. 288, 293; Lake Erie & W. R. Co. v. Wilson, 189 Ill. 89, 98; Armour v. Brazeau, 191 Ill. 117; John S. Metcalf Co. v. Nystedt, 203 Ill. 333, 337; Momence Stone Co. v. Turrell, 205 Ill. 515, 522; Sargent Co. v. Baublis, 215 Ill. 428, 433; Montgomery Coal Co. v. Barringer, 218 Ill. 327; McCormick Harvesting Machine Co. v. Zakzewski, 220 Ill. 522, 526; Christiansen v. Graver Tank Works, 223 Ill. 142; Elgin J. & E. R. Co. v. Myers, 226 Ill. 358, 363; Galloway v. Chicago, R. I. & P. R. Co., 234 Ill. 474; Pinkley v. Chicago & E. I. R. Co., 246 Ill. 370, 377.

In Lake Erie & W. R. Co. v. Wilson, *supra,* it is said that ''The duty and liability are the same with regard to the place of work and the appliance with which the work is done.'' To the same effect are Hess v. Rosenthal, 160 Ill. 621; John S. Metcalf Co. v. Nystedt, *supra,* and Montgomery Coal Co. v. Barringer, *supra.* In the last case, it is said that the rules announced in the cases of Goldie v. Werner, *supra,* and Metcalf Co. v. Nystedt, *supra,* ''have been repeatedly approved and reaffirmed by this court   *   *   *   and are the settled law of this state.'' In the same case, the court recognizes a modification or exception to the third subdivision of the rule in the following language (p. 331): ''The servant must not only have knowledge of the defect in the appliance or place, but must appreciate the danger to him when using the appliance or working in the place, in order to relieve the master from liability when the servant has been furnished a defective appliance or is directed to perform service in an unsafe place and is injured;'' but as to this exception the court said, (p. 332): ''This qualification to the third rule above referred to is a wholesome one in many instances, and should be enforced when the danger from the use of the appliance or the per-

formance of work in an unsafe place is not obvious to the servant from a knowledge of the defect in the appliance or place, *but where the defect in the appliance or place is known and the danger is obvious to a man of ordinary intelligence such exception to said rule ought not to be applied.* All persons of mature years and ordinary experience, and endowed with their natural faculties, must be held to understand the ordinary laws of nature, such as that water will run down hill, a falling body will strike the ground, etc., and it must be presumed, when such persons have knowledge of obvious defects in appliances or places with or in which they are engaged in performing ordinary labor and with which they are entirely familiar, they will also comprehend the natural and probable results which will follow from a use of such appliance or from working in such place.'' (Italics ours.) The same exception is recognized in the case of Galloway v. Chicago, R. I. & P. R. Co., *supra,* where the court adds the qualification to its statement of the rule, in substance as follows: that if it appears that the servant had knowledge of the physical condition and defect which created the danger, then he is required to prove ''that he did not know, and was not chargeable with knowledge of, the danger resulting from the existence of the defect.''

Applying these well established principles to the facts of this case, there is little doubt that the first two essentials to a recovery were proved, viz: that an unsafe and even dangerous condition existed, and that appellant knew that fact. The serious question is whether the preponderance of the evidence shows either that appellee did not know, and did not have equal means of knowing, of the defective condition at the place of the accident, or if he did have knowledge of the physical condition complained of, that he did not know, and was not chargeable with knowledge of the danger resulting from the existence of that condition. It was shown that appellee knew the general

Weise v. Conrad Seipp Brewing Co., 178 Ill. App. 44.

location of the conveyor, the manner of its construction and the way it was used and operated; that for three weeks in September and October, and six days immediately prior to the accident, he had participated daily in the work of transferring malt from the bins to and through the conveyor; that every day except three or four during that time—twenty-four days in all—one of the men with whom he was working shoveled malt into the conveyor in appellee's presence, and on those three or four days, appellee himself did that work; that while the work was going on, the uncovered section of the conveyor could be seen revolving and carrying away the malt, and that the conveyor made a noise as it revolved which could be plainly heard by anyone working near it. He knew that it was customary to remove about nine feet of the iron plates opposite the bin that was being emptied. He admitted that he saw the conveyer uncovered and revolving about five feet beyond the place where he stood just before the accident. In doing his work and seeing the other men do their work, he could not fail to see that each movement of the scraper brought up to and over the uncovered section of the conveyor a pile of wet and matted malt and to see that these piles of malt were carried away when they either sank into the conveyor by their own weight or were "shoved in" by the man with the fork. It appears that fifteen or twenty of such piles were thus brought up to and carried away by the conveyor during the twenty minutes immediately prior to the accident. Under these circumstances, any man of ordinary intelligence would certainly know that if he stood upon such a pile of malt at, or very near to, the opening above the conveyor and shoveled part of the pile at his feet into the conveyor the remainder would be likely to sink at any moment under his weight. He would also know that the floor adjoining the conveyor would be more or less slippery after several of such piles of malt had passed over it. These were dangers that were perfectly ob-

vious. They were apparent from mere casual observation, and therefore were risks which were assumed by appellee by continuing in his employment without objection after he had knowledge thereof or such means of knowledge as the evidence shows he had. In Browne v. Siegel, Cooper & Co., 191 Ill. 226, 233, it is said: "The master's duty requires him to furnish the servant a place ordinarily safe in which to work, and that the machinery, means and appliances which he provides for the service shall be ordinarily safe and free from danger to the servant in their use, and the servant has the right to assume that he has performed this duty. But even if the master fails in such duty, and there are, to the knowledge of the servant, defects in such machinery, means and appliances which render their use hazardous, he is held to have assumed the hazard, for he cannot go on with knowledge of the danger, without complaint, until he is injured and then hold the master liable. The servant assumes not only the ordinary risks incident to his employment, but also all dangers which are obvious and apparent." See also McCormick Harvesting Machine Co. v. Zakzewski, 220 Ill. 522, 530.

It is urged, however, that appellee was negligently ordered to work at the place where he was injured, and that for this reason he did not assume the risk of injury while obeying the order. The alleged negligent order consisted in the foreman's telling appellee, while he was on his way to the place, to "go down there and shove the malt right into the conveyor." Appellee made no objection to this. He said that he understood the meaning of the order, that he "ought to know" what work was to be done. He was not told to do the work in any particular manner or to do anything other than the customary work. The order amounted to nothing more than a mere direction to go to work, as usual. Such an order is not the kind of an order which will operate to relieve the servant of an assumption of risk. To have that effect, the alleged

negligent order must be an order which amounts to an assurance of safety upon which the servant may rely. In Elgin, J. & E. R. Co. v. Myers, *supra,* it is said: "Where the servant knows of a defect or what the danger is, he cannot be said to rely upon the assurance that the danger does not exist. It is only where the servant has been misled by the assurance of the master, or some one standing in the master's place, that he can excuse himself from the assumption of the risk on the ground that he has been assured by the master that there is no danger in the use of the appliance or piece of machinery which he knows, as a matter of fact, is defective and the use thereof attended with danger." The same doctrine was repeated in Republic Iron & Steel Co. v. Lee, 227 Ill. 246, 259. There is nothing about the alleged order given to appellee which could have misled him in any way, or which could have been regarded by him as an assurance of safety upon which he could rely, contrary to his own knowledge of the danger. Nor is there any evidence that he was in any manner coerced into doing work he would otherwise not have done, or would have done in any different manner.

After a careful consideration of all the facts and circumstances shown by the record in this case, we are unable to escape the conclusion that appellee had full knowledge of the physical conditions surrounding the place where he was working and of the danger incident thereto, and that he was not misled by any negligent order of appellant's foreman. It follows, as a matter of law, under the authorities above cited, that he assumed the risk of injury and cannot recover.

The judgment of the Superior Court will therefore be reversed with a finding of facts.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment. The court finds from the evidence that at the time of his injury, appellee had full knowledge of the facts

54    APPELLATE COURTS OF ILLINOIS.

Steven v. Fidelity & Casualty Co. of N. Y., 178 Ill. App. 54.

regarding the place in which he was working and was chargeable with knowledge of the defects and danger complained of in the declaration, and assumed the risk of injury therefrom.