CLARENCE W. GALLOWAY, Appellee, *vs.* THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Appellant.

*Opinion filed April 23, 1908—Rehearing denied June 4, 1908.*

1. RAILROADS—*when an operator of turn-table is charged with knowledge of danger.* An employee twenty years of age and of ordinary intelligence, who has been operating a turn-table for some ten nights and has observed that some of the ties of the table he is required to cross after signaling a backing engine to come on the table are set far enough apart to let his foot through, is charged with knowledge of the danger that his foot might slip between the ties and be held there until the engine was upon him.

2. SAME—*when danger is one which is assumed.* The danger of stepping between the ties of a turn-table when crossing the same after signaling a backing engine to come on the table must be regarded as one which is known to and assumed by the servant, although he was carrying out instructions he received when he began to work some ten nights before, and which required him, as he knew, to cross the table many times a night.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. FROST, Judge, presiding.

This is an appeal by the Chicago, Rock Island and Pacific Railway Company from a judgment of the Appellate Court for the First District affirming a judgment of the superior court of Cook county recovered by Clarence W. Galloway, appellee, against appellant, in an action on the case brought in his name by Marie L. Galloway, the mother and next friend of appellee, for personal injuries.

The declaration consists of four counts, by which it is alleged that on November 24, 1904, appellant had located at Blue Island, in Cook county, Illinois, a round-house and turn-table, used for the purpose of storing and turning engines then in use by said company along the line of its railroad; that the appellee, who was employed to operate the

turn-table, was a youth without experience and knowledge of the dangers incident to working around and about said turn-table, and that it was the duty of appellant, in employing him, to fully inform him, before or at the time of his employment, of all the dangers attendant upon the work of operating said turn-table, which appellant negligently failed to do; that the turn-table was negligently constructed, and that appellant negligently allowed the lever operating the brake on the turn-table to be and remain out of repair; that the turn-table was negligently constructed, in that the ties on which the track rested were laid with just space enough between to allow the foot or leg of one passing over the turn-table to be caught and held fast; that appellee, by reason of the negligence charged, while assisting in backing an engine upon the turn-table, stepped between two of the ties, where his foot was caught and held fast and his leg was then cut off by an engine passing over him before he could escape. To the declaration appellant pleaded the general issue. Upon the trial the court, at the close of all the evidence, denied the motion of appellant for a directed verdict. The jury fixed appellee's damages at $9000. Motions for a new trial and in arrest of judgment were overruled and judgment entered upon the verdict.

The turn-table in question was seventy-five feet in length and about twelve feet in width. It supported a single standard-gauge railroad track, the rails of which were placed on ties eight inches square, set from two and one-half to four inches apart. The ties rested upon steel girders. The ends of the ties extended beyond the rails on each side of the track between three and four feet, and this space without the rails was covered with planks the entire length of the table. Between the rails, however, there was no covering over the ties and the spaces between the ties were left open. The turn-table was operated by a gasoline engine and certain levers which were upon and attached to the table and which moved with the table. Passing upon the

table from the operating end, the engine and levers were located upon the right. This machinery was covered by a small shanty built upon the table, the door opening into which was in the side of the building next to the track and about three feet from the end of the table. When an engine approached the turn-table it was the duty of the operator to first "spot" the table, or move it so that the track upon the table would be in line with the track on which the engine was standing. The table was always turned so that the end upon which the building was constructed would be next to the approaching engine. After the table was so "spotted" the operator would signal the hostler of the engine to move it onto the table, and after that was done the table would be turned so as to permit the engine to be moved from the table upon the track desired. If the engine approaching the table was moving with the front end toward the turn-table, the signal to the hostler, who always occupied a position on the right side of the engine, could be given by the turn-table operator from the door of the shanty, but if the engine was backing up to the turn-table it was necessary for the operator to stand on the opposite side of the track to give the signal. The hostler being on the right side of the engine would be on the left side of the track as the engine backed up to the turn-table, and the tender would prevent him seeing the turn-table operator if the latter remained on the right-hand side of the turn-table.

Appellee was employed by appellant through the witness Coffman, hereinafter mentioned, as night operator of this table. His duties began at six o'clock in the evening and continued until the same hour in the morning. At the time of his injury he was twenty years and four months of age, a boy of ordinary intelligence and of at least ordinary experience for a person of his age. He had lived in Chicago or in the suburbs of that city practically all his life. He had worked for some time in a stamping mill. Afterwards he worked for a year and a half in a boiler shop, and later, prior

to his employment by appellant, he worked for a year and a half in a foundry. On November 14, 1904, he began work for appellant, and during the first three nights of his employment Coffman, who had operated the table before appellee began work, stayed with him and instructed him in regard to his duties. Among other things, according to the testimony of Coffman and of appellee, Coffman at that time told him to hold down a certain lever in the shanty controlling the brake on the turn-table when an engine was coming upon the table, to prevent the brake which held the turntable in place being loosened by the jar of the engine, which would result in the table moving and derailing the engine. They also testified that the necessity for holding this lever arose from the fact that it was out of repair. The ties between the rails were somewhat oily from the drippings of the locomotives. There were thirty stalls in the roundhouse at this place and twenty-five or thirty engines would pass over the turn-table every night. Between nine and ten o'clock in the evening of November 24, 1904, a small switch engine backed up to within thirty or forty feet of the turntable and stopped for a signal from Galloway. The table was "spotted" by Galloway, who operated the machinery in the shanty. He then stepped over to the opposite side of the track from the shanty and with his lantern signaled the hostler to come on, and then started across the track to the shanty. While attempting to cross, one of his feet slipped down between the ties on the table and he was unable to extricate it in time to prevent his leg being run over and cut off by the engine as it backed upon the turn-table. When appellee attempted to cross the track the only lights burning in that vicinity were the head-light of the engine, the lantern carried by appellee, and two red lights placed one on each side of the track about half way across the turntable. The arc lights which ordinarily lighted the surroundings, for some reason not disclosed, had ceased burning about fifteen minutes earlier.

Coffman, when directed by the superintendent of the round-house to employ appellee, was also directed by him to teach appellee how to operate the table. In accordance with that direction he told appellee, in substance, that when an engine backed up he should, after "spotting" the table, pass across the track from the door of the shanty, signal the hostler and immediately pass back across the track to hold the defective lever. On the morning following his first night's work appellee noticed how the ties were laid on the table and that there were open spaces between them.

It is contended by appellant that the danger of being injured on said turn-table was a risk assumed by appellee, and that the superior court erred in refusing to instruct the jury to find for the defendant.

M. L. BELL, (BENJAMIN S. CABLE, of counsel,) for appellant.

CHARLES M. FOELL, MORSE IVES, and EARL J. WALKER, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

To warrant the action of the superior court in denying the motion for a directed verdict as the case was presented in that court it was necessary that there should be evidence in the record tending to prove, first, that the turn-table was defectively constructed and that such defective construction was the proximate cause of appellee's injury; second, that the appellant had knowledge of, or in the exercise of ordinary care would have had knowledge of, the defect; third, that appellee did not know of the defect and did not have equal opportunities with the appellant of knowing of it, or if he did have knowledge of the physical condition of the turn-table, and therefore had knowledge of the defect which created the danger, that he did not know, and was not chargeable with knowledge of, the danger resulting from

the existence of the defect. These propositions are so well established in this State that it is no longer necessary to cite authorities in support of them. If appellee had knowledge of the defect, then, in determining whether he had or should have had knowledge of the accompanying danger, it is proper to take into consideration his youth, immaturity and inexperience, in so far as they appear from the evidence.

It is to the third proposition that the argument of appellant is directed. Appellee testified that on the morning succeeding the first night that he was at work on this turntable he observed the openings between the ties. He worked there altogether ten nights. Between the time when he first observed these openings and the night upon which he was hurt he worked there eight successive nights,—a total of ninety-six hours. The place was lighted by electricity, so that one could see almost as plainly as in the daytime. The door of the house or shanty covering the machinery, which was on the turn-table, was on the side of the building next the track, a boarded space intervening between the door and the rail. Twenty-five or thirty engines passed over the table during each twelve hours, or at the rate of one engine about every twenty-five minutes. Whenever an engine approached the turn-table with the tender foremost, which is said to have been frequently, it was necessary for appellee to pass from the boarded space in front of the door of the shanty directly across the track onto the planks which lay immediately alongside the rail on the other side of the track from the shanty, and after signaling the hostler in charge of the engine he would cross directly back to the door of the shanty. He must have made this crossing to and fro many times each night, and he therefore became entirely familiar with the construction and physical condition of the turntable, and knew, as well as any man could know, of the existence of the openings between the ties. They were before him almost constantly during his working hours. He could scarcely step out of the door of the shanty without

seeing them. The defect in the brake lever with which he had to work is without significance, except that on account of that defect he was directed to do his work in the manner in which he did do it, viz., when he was on the side of the table opposite the building and the hostler had received his signal to move the engine upon the table, appellee would then cross immediately over the table for the purpose of holding the lever while the engine was coming upon the turn-table. Save for the necessity of crossing the table in order to reach the lever quickly, he could, after signaling the hostler, have walked off the end- of the turn-table toward the engine, crossed the track on which the engine was approaching and then walked upon the table again on the right side, and thus have avoided passing over the track on the turn-table after giving the signal. Having knowledge of the manner in which the turn-table was constructed, can it be said that the evidence tends to show that he did not have, and was not chargeable with knowledge and appreciation of, the accompanying danger?

By his counsel appellee says: "It was a question of fact for the jury and the Appellate Court whether the inexperienced appellee, in the absence of warning, appreciated that his foot might slip down between the ties; that if it did so it might not readily come out, and that this might occur just as an engine was approaching." Great stress is placed by the attorneys for appellee upon the fact that he was without experience in the railroad business. It required no knowledge of the business of railroading to understand and appreciate the danger to which the appellee was exposed by reason of the spaces between the ties on the turn-table. In so far as that particular defect was concerned, the construction of the turn-table was exceedingly simple. The ties rested upon steel girders, which they crossed at right angles. There was an open space below. The spaces between the ties varied in width from two and one-half to four inches. Any youth twenty years of age, with or without experience

in railroading, possessed of ordinary intelligence, would know that there was danger of his foot slipping into one of the wider spaces while he was crossing the table and getting so caught or fastened that he would have difficulty in removing it. Any intelligent person who had observed engines passing over the turn-table would know that if his foot slipped into one of those openings and he had difficulty in removing it, an engine in passing over the turn-table might crush him before he could get out of the way.

In this connection it is argued that little reliance can ordinarily be placed upon the estimate of a witness as to distance; that the faculty of close observation of objects is largely a gift, much stronger in some persons than in others, and that for this reason it cannot be presumed that the appellee correctly gauged the exact width of the openings between the ties. It may be that it should not be presumed that he could state the exact width of these openings in inches, but it seems to us that his observation of these openings as he passed back and forth across them for eight nights in succession must have shown him, by comparison, that some of them were as wide or wider, and some of them were narrower, than the shoes which he was wearing.

We do not think there is any evidence in this record that indicates any incapacity of the appellee, by reason of ignorance, immaturity or inexperience, to fully understand and fully appreciate the danger to which he was exposed by reason of the uncovered spaces between the ties. He was in the twenty-first year of his age and of ordinary intelligence. He had worked several years in occupations where he was necessarily brought in contact with machinery and various mechanical devices, which must have given him some general knowledge of the necessity of exercising caution for his personal safety in using machinery or appliances of like kind.

In *Montgomery Coal Co.* v. *Barringer*, 218 Ill. 327, in discussing the proposition that in order to charge the employee with the assumption of the risk it must appear not

234—31

only that he had knowledge of the defect, but also that he knew and appreciated the accompanying danger, it was said: "All persons of mature years and ordinary experience, and endowed with their natural faculties, must be held to understand the ordinary laws of nature, such as that water will run down hill, a falling body will strike the ground, etc., and it must be presumed, when such persons have knowledge of obvious defects in appliances or places with or in which they are engaged in performing ordinary labor and with which they are entirely familiar, they will also comprehend the natural and probable results which will follow from a use of such appliance or from working in such place."

We think the law so stated must be applied here. The danger now under consideration was, that in crossing over the track after signaling the hostler the passer's foot would slip into a space between the ties and be there caught and held in such manner that he could not withdraw it before an engine came upon him. It required only knowledge of the simplest rules of nature to understand and appreciate the risk of injury. The evidence does not tend to show that appellee lacked that knowledge. It is true that he encountered this danger by doing his work in the manner in which he was ordered to do it by Coffman, who originally employed him. In crossing the table at the time he received the injury, however, he did not act upon an order given him at that time, so it cannot be said that he encountered the danger in acting, without time for reflection, upon an order given by his superior. He crossed in accordance with an order directing him to do his work by a certain method. That order had been given him many days before. The duties which he undertook to perform required, as he knew, that he cross the track frequently every night. The danger to which he was exposed in so crossing was therefore one of which he had knowledge and which he assumed.

The jury should have been instructed to return a verdict for defendant.

The judgment of the Appellate Court and the judgment of the superior court will be reversed, and the cause will be remanded to the superior court for further proceedings consistent with the views herein expressed..

*Reversed and remanded.*