Jerry Lynch, Defendant in Error, v. Montgomery Ward & Company, Plaintiff in Error.

Gen. No. 14,749.

MASTER AND SERVANT—*when doctrine of assumed risk applies.* If the defect which resulted in the injury complained of was known to plaintiff and was open and obvious to any person of ordinary intelligence and if the servant with knowledge of such defect and appreciating the danger thereof remained in the employ of his master, he assumed the risk and cannot recover.

Action in case for personal injuries. Error to the Municipal Court of Chicago; the Hon. EDWARD DICKER, Judge, presiding. Heard in this court at the October term, 1908. Reversed with finding of facts. Opinion filed December 6, 1909.

F. J. CANTY and R. J. FOLONIE, for plaintiff in error.

J. D. RYAN, for defendant in error.

MR. JUSTICE BAKER delivered the opinion of the court.

This is a writ of error prosecuted by defendant to reverse a judgment for $578 recovered by plaintiff in the Municipal Court for personal injuries. Plaintiff was in the service of defendant, engaged in unloading boxes of goods from wagons and sending them down, through a hatchway in the sidewalk, to the basement of defendant's building. Heavy iron doors which opened upward from the middle, north and south, were used to close the hatchway, and iron lattice work gates were provided to bar entrance to the hatchway, from the east and west. These gates were removed when the hatchway was closed. When the hatchway was open, the south door stood perpendicular, the north door stood inclined outward, or to the north, and the gates were in place. To keep the south door in position when open an iron rod about three feet long was provided, which ran from near the top of the door, at its west end, to near the middle of the west side of

the hatchway. The upper end of this rod was fastened to the door and the lower end was bent, so as to form a hook, and was hooked into a screw eye or staple in the frame of the hatchway. A similar rod and staple were provided to hold the north door in position. Near the top of each door when open was a ledge, and to further prevent the doors from falling inward a scantling was used which ran from one door to the other, near the west end of the doors, and rested on said ledges. To prevent the doors from falling outward a chain ran from one door to the other and was attached to the top of each door near its west end. All of the appliances for keeping the doors in position when open were near the west end of the doors. At the time plaintiff was injured the chain above mentioned was slack and had been thrown over the west gate.

Plaintiff, at the close of work, for the purpose of closing the hatchway for the night, removed the plank which was between the tops of the doors, and took hold of the chain to lift it from the gate, in order to remove the gate, and while he had hold of the chain, the north door fell inward and his fingers were caught between the end of the door and the gate and injured.

Plaintiff and Denihan had been sending goods down through the hatchway for five or six weeks before plaintiff was injured, and during that time had opened the hatchway in the morning and closed it at night. As a rule Denihan took the west end and plaintiff the east, but plaintiff had some times, both in opening and closing the hatchway, taken the west end and hooked the rods into the staples in opening and unhooked them in closing the hatchway. Two or three weeks before the accident a box struck the rod that held the south door in place, just above the hook and bent it. After the rod was bent it was difficult to hook it into the staple, the hook sometimes had to be forced into the staple and it sometimes came out of the staple after it had been hooked into it. About two weeks before the accident plaintiff fastened the hook in the

staple with a string. From the time the rod was struck by the box and bent until the accident, plaintiff and Denihan, and they only, opened and closed the hatchway and used it during the day.

Denihan, called by the plaintiff, testified in chief as follows:

"Q. What was the condition of those hooks, say for two weeks before the accident happened to Jerry Lynch?

A. One of the hooks was bent and we often had to hammer it in there to keep it in the staple.

Q. Which hook? A. The south hook.

Q. After it became bent what effect did that have on its going into the staple?

A. It wouldn't fit in there very well; it wouldn't stay there.

Q. During that two weeks did that hook remain in the staple most of the time or out of it?

A. It was out of the staple some times.

Q. That was because of its being bent?

A. We couldn't set it in".

Plaintiff testified that the last time he took the west end in assisting to close the doors, was about a week before the accident; that he tied the hook which held the south door in place into the staple a couple of weeks before the accident. He gave no testimony tending to contradict the testimony of Denihan, or to show that the condition of the hook was not known to him before the day of the accident.

A careful examination of the evidence has led us to the conclusion that the condition of the hook was known to plaintiff before the day of his injury.

The conclusion most favorable to the plaintiff, that can properly be drawn from the evidence is, that the rod which, if in place, would have held the south door in position was bent, and therefore defective; that because of such defect it had worked out of the staple; that by reason thereof the door fell and injured the plaintiff, and that therefore the defective condition of

the rod or hook directly contributed to plaintiff's injury.

But the defective conditions of the rod or hook was known to the plaintiff; the danger of the use of the rod and hook in such defective condition was open and obvious to any person of ordinary intelligence, and with knowledge of the defect and danger plaintiff continued in the employment of the defendant, and therefore must be held to have assumed the risk attendant upon the use of rod or hook in such defective condition. Galloway v. C., R. I. & P. Ry. Co., 234 Ill. 474.

The judgment will be reversed with a finding of fact, and the cause will not be remanded.

*Reversed with finding of fact.*