### Ella A. Vandeveer, Appellee, v. Anderson Brothers, Appellants.

MASTER AND SERVANT—*what risks are assumed.* A servant assumes the risk of all the known dangers incident to his employment and takes upon himself the hazard of defective appliances and unsafe places, if, after his employment, he knows of the defects or conditions and voluntarily continues in the employment without objection; if the danger is such that a person of ordinary intelligence would know what would follow from the defective appliances or unsafe surroundings and he has knowledge of such conditions, such knowledge carries knowledge of the danger and the risk is assumed.

Action in case. Appeal from the Circuit Court of Christian county; the Hon. ALBERT M. ROSE, Judge, presiding. Heard in this court at the May term, 1907. Reversed, with finding of fact. Opinion filed December 7, 1907. Rehearing denied May 21, 1908.

J. C. & W. B. McBRIDE, for appellant; J. E. HOGAN, of counsel.

FRANK P. DRENNAN, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case brought by appellee against appellants to recover damages for wrongfully causing the death of Horatio Vandeveer of whose estate appellee is administrator. The jury returned a verdict for the plaintiff and assessed her damages at $1,000. Judgment was rendered upon such verdict and the defendants appealed. At the close of the plaintiff's evidence and again at the close of all the evidence, motions to exclude the same and direct a verdict for the defendants were interposed and overruled.

The first additional count of the declaration avers, in substance, that on April 14, 1905, the defendants were engaged in the business of manufacturing brick; that in making the same dirt was thrown into a mud-pit containing a large auger; that said auger was laid in a trench on one side of the pit; that said auger was propelled by steam power and was used to mix and convey mud from the pit to a molding machine; that connected with said molding machine was a large belt running on the outside of the pit and next to the auger, by the use of which the surplus mud was conveyed from the molding machine back to the pit to be again mixed; that on the day aforesaid the deceased was in the employ of the defendants as pit-man and as such was required to work inside of the mud-pit in mixing mud and feeding it to the auger; that it was a part of his duty as such pit-man, whenever the belt upon which the mud was carried would clog or stop, to reach over the auger, take hold of the belt and start the same, or when the mud began to roll upon the belt, to reach over and pack the mud so as to cause it to be carried by the belt back into the pit; that defendants had

negligently placed the trough containing said auger upon one side of the pit with a foot-hold but two inches wide upon which the pit-man was obliged to stand in order to reach the belt over the auger; that while the deceased was attempting to pack the mud thereon as aforesaid, he slipped and fell into the auger receiving injuries which caused his death, etc. The second additional count alleges that the deceased was inexperienced in the performance of said work in the manner detailed and described, and that it was the duty of the defendants to instruct him in regard to the dangers attendant thereon; that the defendants failed to so instruct him; that the defendants then and there negligently permitted said auger to be exposed the full length of said trough without any railing along the side of the auger, and that while the deceased was engaged as such pit-man in performing his duty in the manner in which the same had been done by other pit-men in the employ of defendants, and while engaged in assisting in starting the belt or in packing down the mud thereon, slipped and fell into said auger.

The fifth count alleges that it was the duty of the defendants to adopt rules and methods of using the machinery and performing the work so as to make the performance of the work reasonably safe and that they had negligently and carelessly permitted an unsafe method to be adopted in the performance of said work and failed to warn the deceased of the dangers attendant thereon; that deceased was inexperienced and did not know of such dangers; that defendant did know of them and while performing his work in accordance with such dangerous method or system, on account of his inexperience and the failure to warn him, or adopt rules, the deceased received the injury.

The evidence discloses that appellants who were engaged in the business of manufacturing brick, operated a machine for molding brick, on the south and east side of which there was a mud pit. Attached to the west side of the mud pit there was a conveyor com-

monly called an auger used to convey the mud from the pit into the molding machine. Outside of and on the west side of the pit was a belt that ran at an elevation of about thirty degrees, the lower end of which was at or near the molding machine and the upper end near to the farthest end of the auger from the machine. Such of the cuttings from the brick as were fit to be worked over were thrown upon this belt, carried back to the farthest end and dumped upon a slanting board attached to the south end of the auger box and again thrown into the auger. The mud pit which was built upon the surface of the ground was about six feet deep, ten feet wide and sixteen feet long. The auger which was exposed its full length and operated by a shaft attached to its south end, was in an open box about fifteen inches deep, twelve inches wide and built upon the west side of the mud pit, the top of the box being about fifteen inches from the top of the pit. The shaft was covered by a box about fifteen inches square. West of the box, nearly opposite to it and about eighteen inches below it, was a lever that worked a friction clutch by the use of which the auger could be thrown in and out of gear without interfering with the operation of the other machinery. The deceased was injured the ninth morning after he had commenced work at the brick yard. He was employed in the capacity of pit-man, his duties being to spade and throw mud from the pit into the auger, whence it was carried into the machine; and also to turn water upon the mud into the auger to temper it. When he came to work, May, the foreman of appellants, directed him how to perform these duties and also how to operate the lever, and to cover the auger when filling the mud pit.

The mud pit was usually filled during the afternoon and the machinery operated in the forenoon. On the day of the accident the deceased had thrown into the mud pit one spade of about fifteen inches of depth over the pit and part of the second spade. At about

ten o'clock the making of brick was discontinued but the machinery including the auger continued in operation. Shortly thereafter the deceased stepped upon a board which projected about two inches from the wall on the west side of the pit and immediately above the top of the box containing the auger. From some cause his foot slipped off the board, causing him to fall into the pit, and his foot was drawn into the auger and so crushed that he thereafter died.

The evidence on the part of appellee tends to show that mud had clogged upon the belt; that deceased had climbed upon the board in question for the purpose of removing the same, and that such was the method usually followed by other pit-men in the employ of appellants in removing mud from the belt.

The evidence adduced by appellants tends to show that the mud belt was running and that the deceased had no occasion to get upon this board to help the mud along the belt; that he was standing up on the west side of the mud pit over the auger engaged in a conversation with one Long at the time his foot slipped; that the auger was at the time exposed and there was very little, if any, mud in it, and that deceased by stepping a few feet to the south end of the auger could have moved the lever and stopped the auger without interfering with the other machinery, and then with safety have stepped up over the auger, or that he could have stepped to the edge of the pit and there descended a pair of steps that were built for going in and out of the pit to the belt.

It has been repeatedly held in this state that a servant assumes the risk of all the known dangers incident to his employment and takes upon himself the hazard of defective appliance and unsafe places, if, after his employment, he knows of the defects or conditions and voluntarily continues in the employment without objection. And that if the danger is such that a person of ordinary intelligence would know what would follow from the defective appliance or unsafe sur-

roundings, and he has knowledge of such conditions, such knowledge carries knowledge of the danger and the risk is assumed. E., J. & E. Ry. Co. v. Meyers, 226 Ill. 358, and cases there cited.

Waiving the controverted questions as to whether the appliances and surroundings were defective or unsafe, and whether or not the deceased was in the exercise of ordinary care when injured, we are constrained to hold that the evidence clearly establishes the fact that the deceased must have known the conditions existing at the place provided for him to work and any dangers arising therefrom or attendant thereon, and that under such circumstances he assumed the risk of injury when he stepped or stood upon the narrow ledge immediately over the moving auger. The evidence discloses that he was thirty-seven years of age and was possessed of ordinary intelligence. The machinery and appliances by which he was surrounded were simple both in construction and manner of operation. He had worked as pit-man for over a week and must have seen the continuous revolutions of the auger when in use, and known that when standing upon a narrow ledge immediately over the auger he was liable to lose his foot-hold and fall upon the auger, in which event serious injury would result.

These facts were established by the evidence of several of the witnesses called in behalf of appellee, and are not controverted by any evidence in the record. For the reasons stated the judgment of the Circuit Court must be reversed, without remanding the cause.

*Reversed with finding of fact.*

Finding of fact, to be incorporated in the judgment of this court. We find that the injury which caused the death of appellee's intestate resulted from a danger the risk of which was assumed by him under his contract of employment.