Fourth District—June, 1917. 417

Weber v. City Water Co. of E. St. L. & Granite City, 206 Ill. App. 417.

## Charles M. Weber, Appellee, v. City Water Company of East St. Louis & Granite City, Appellant.

1. FERRIES—*when evidence is sufficient to show operation of ferryboat.* Evidence that a water company, which owned part of an island in a river on which its plant was located, used a cable ferryboat, which was used by the persons owning the rest of the land on the island, in transferring coal and other things across to its waterworks, and paid two-thirds of the expense incurred in the operation of the boat, *held* sufficient to show that such company was actually engaged in the operation of the boat.

2. NEGLIGENCE, § 24*—*what duty owed to servants of independent contractor.* The owner of premises is under the same obligation to use reasonable care for the protection of servants of an independent contractor who are invited upon the premises as he would of servants employed by himself to do the work.

3. NEGLIGENCE, § 26*—*when owner is not liable for injury to servant of independent contractor.* While a servant of an independent contractor who is employed by the owner of premises is not a mere licensee upon premises of the owner and the owner is bound to exercise reasonable care for his safety while upon the premises, yet where there is a dangerous condition existing which is known to the owner of the premises and not to the servant, a liability will attach, but if the unsafe condition is known to the servant, the owner is not liable.

4. FERRIES, § 9*—*when employee of independent contractor assumes risk of traveling with team on ferryboat.* An employee of an independent contractor, who has a contract with a water company operating a cable ferryboat from the mainland to an island in a river to convey coal to the plant on such island, and knows that the boat is operated without railings on the ends, assumes the risk incident to traveling over in the boat in the manner in which it is operated, and consequently cannot recover against the water company, for the loss of his team used in hauling coal, due to its becoming frightened at the operation of the cable and rushing over one end into the river and being drowned.

Appeal from the City Court of Granite City; the Hon. M. R. SULLIVAN, Judge, presiding. Heard in this court at the March term, 1917. Reversed with finding of facts. Opinion filed June 18, 1917.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

BARTHEL, FARMER & KLINGEL and F. A. GARESCHE, for appellant.

T. M. WEBB, for appellee. °

MR. PRESIDING JUSTICE MCBRIDE delivered the opinion of the court.

The appellee obtained a judgment against the appellant for the amount of $357.50, for the loss of a span of mules, which judgment it is sought by this appeal to reverse.

It appears from the record in this case that the Niedringhaus trustees and the appellant are the owners of an island known as Gabaret Island, consisting of about 1,840 acres, which island is formed by a slough coming out from the Mississippi River and extending around and back again into the river, and the slough is on the east, or Granite City, side of the island, and the Mississippi River on the west. The slough varies in width from one hundred to two hundred feet and is of the depth of twenty feet in places. This island is cultivated and used by the Niedringhaus trustees, except the forty acres belonging to appellant, and its waterworks are located upon the forty-acre tract and is operated by appellant. Appellant and the Niedringhaus trustees used and operated a boat of the length of about sixty feet and the width of about forty feet with aprons of the length of about eight feet extending out at each end. There is a railing or guard upon the sides of the boat but none at the ends where the aprons are. The boat is operated by means of a cable and is used by all persons having business to transact upon this island, principally for the benefit of the Niedringhaus trustees and the appellant. Much of the coal used by appellant in operating its waterworks is transferred to its plant by means of this boat. It further appears from the evidence that a man by the name of Gowdy

had a contract with appellant to deliver coal to its plant upon this island and that Gowdy had employed appellee to do the hauling of the coal and that on January 4, 1916, appellee hauled a load of coal to appellant's plant, going over to the island upon the boat above described. That he passed over about three or four o'clock in the afternoon and returned near six. That upon his return he drove his wagon at about the middle of the boat, being about fifteen or twenty feet from each end. The manager of the boat and appellee started the boat by means of a cable and were engaged at this work when appellee's mules became scared. There was some noise from the pulley upon the cable which frightened the mules and caused them to run off of the boat at the end and fall in the stream and were drowned. It further appears that appellee had used this team many times in hauling and passed over this slough in this boat but the team had never before become scared at the operation of the boat. Appellee says that he had passed over on this boat with the team seventy or eighty times and that his team was gentle, and further states that at this time he knew there were no railings on the platform or aprons, and knew it on previous occasions.

The declaration charges that appellants negligently and carelessly maintained and used said boat without railings or other guards to prevent teams and wagons from falling therefrom. That on account of such negligence the appellee was injured in his property as above stated.

To the declaration the defendant filed the general issue and also a special plea denying that it was possessed of and operating the drawbridge or ferry charged in the declaration. It is insisted by counsel for appellant that it was not engaged in the operating of this drawbridge or boat, but that it was operated by the Niedringhaus trustees. The evidence shows

that appellant used this boat in transferring coal and other things across to its waterworks located upon this island, and that it paid two-thirds of the expense incurred in the operation of this boat, so that the jury were warranted in finding that the appellant was actually engaged in the operation of the boat.

It is next insisted by counsel for appellant that no liability could attach to it for this injury because it was not engaged in conducting the ferry for hire or reward and that it was merely a gratuitous bailee, and cites the case of *Self v. Dunn,* 42 Ga. 528, and other cases in support of this position. We do not believe that the rights of the parties in this case, under the rulings of the courts of Illinois, are to be determined upon the principles governing the relations of bailor and bailee but that it is controlled, and the rights of the parties herein are to be measured, by the principle that appellant was engaged in the transaction of business upon this island and that it invited thereto such persons as were necessary or proper for the transaction of its business, and that appellee had been employed by a contractor of appellant to deliver its coal to the plant and that the appellee while engaged in the delivery of this coal was entitled to the protection of one who had been invited upon the premises to transact business. It is said by Thompson on Negligence, vol. 1, sec. 979: ''It is not necessary to suggest that where a proprietor engages an independent contractor to do work upon his premises, the contractor, while executing the work, will be there in pursuance of the invitation of the proprietor, and the proprietor will, under the principles discussed in this chapter, be under the duty of exercising ordinary or reasonable care, to the end of promoting his safety. In almost every such case there is the further implication that if the contractor brings third persons, his own employees, his partners or assistants, to assist him in executing the

contract, such persons are presumably upon the premises by the invitation of the owners, and he owes to them the same measure of care, to the end of promoting their safety, that he owes to the contractor himself.'' As we understand the law, the owner of the premises is under the same obligation to use reasonable care for the protection of those who are thus invited upon the premises as he would of servants employed by himself to do the work. The complaint in this case is not on account of a particular act of negligence done at the time of the injury that caused the harm, but is on account of the faulty construction of the boat that was being used by the appellee in the transaction of its business, and the manner of conducting the business. As we understand the law, the operator of a plant may conduct the business of that plant in his own way even though it may have been conducted in a less hazardous way, or that better and safer facilities may have been used in the transaction of the business, and if at common law the servant knew the mode and instruments used by the operator in the transaction of the business and undertook to work thereat with the modes adopted by the master, and knowing the modes used by him, that he then assumed the risk of the work in hand. Bailee on Master and Servant, page 145; and this author in commenting upon this subject, upon the same page says: ''Therefore it has come to be well settled that the master may conduct his business in his own way although another method might be less hazardous, and the servant takes the risk of the more hazardous method as well if he knows the danger attending the business in the manner in which it is carried on. Hence if the servant knowing the hazards of his employment as the business is conducted is injured while employed in such business he cannot maintain an action against the employer because he may be able to show there was a safer mode in which the business might

have been carried on, and had it been carried on in that manner he might not have been injured." Counsel for appellee, in their argument assert: "The servant or employee of an independent contractor who is employed or under contract by a company is not a mere licensee, but the company is bound to exercise reasonable care for his safety while upon the premises." This doctrine, however, is subject to this qualification, that if there was a dangerous condition existing which was known to the owner of the premises and not known to the persons invited thereon to transact business or perform work that then a liability would attach, but if the unsafe condition is known to such person then the owner would not be liable. It is said in the case of *Calvert v. Springfield Elec. Light & Power Co.,* 231 Ill. page 293: "The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist without timely notice to the public or to those who are likely to act upon such invitation, and if there are hidden dangers upon the premises he must use ordinary care to give persons rightfully upon the premises warning thereof, and that the owner owes such duty to an independent contractor or his servants while working upon his premises"; together with the many authorities referred to by the Supreme Court in this connection. The case of *Calvert v. Springfield Elec. Light & Power Co., supra,* was one in which the Supreme Court says: "Some weeks before the workmen of Drake commenced to remove said stacks, one of the stacks had fallen and broken an irregular hole, from two to five feet in diameter, through the boards and tar paper on the sloping surface of the roof. This hole was

plainly visible to the workmen, although the evidence tended to show that immediately adjoining the hole, while the tar paper remained intact, the boards underneath were splintered and broken, which condition was visible to persons in the building but not to persons upon the roof. The evidence also tended to show that appellee's intestate, while engaged in removing one of said stacks, stepped upon the roof near said hole and broke through the tar paper and fell to the floor of the building and was killed.'' And later on, in the same opinion, the Supreme Court says: ''The evidence shows that the hole in the sloping roof was visible to the workmen upon the roof, and if it appeared from the evidence that the deceased fell through the hole in the roof we should not hesitate to hold that there could be no recovery on account of the assumption of the risk by appellee's intestate.'' The facts in this case show that the appellee had driven this team from seventy to eighty times upon this boat in hauling coal to appellant's plant, and his evidence also shows: ''I knew that there were no railings on this platform or aprons. I saw that when I drove on and I knew it on previous occasions.'' We think it very apparent from this record that the appellee did know that this boat was being operated without guardrails to these aprons, and that he could not help but know that had his team at any time become frightened that there was nothing to prevent it from jumping off into the stream, and nothing to prevent the happening of just what did occur in this case, and having this knowledge of the condition in which the boat was, we are of the opinion that he assumed the risks incident to traveling over in the boat in the condition in which appellant was operating. *Vandeveer v. Anderson Bros.*, 143 Ill. App. 65; *Elgin, J. & E. Ry. Co. v. Myers*, 226 Ill. 358. The appellant was transacting business upon this island and invited appellee and others to transact business with

it, and held out to them, as a means of transacting the business and a means of gaining access to their place of business, the boat as it was equipped and had been used there for many years, and during all this time no accident had ever happened and no team had ever become scared and run off of the boat. If persons did not desire to transact business with appellant under such conditions they were under no obligations to do so.

We are of the opinion that the appellee knew the mode used for gaining access to this island, knew the unsafe condition of the boat, if it was unsafe, and knowing these facts used the boat repeatedly and was willing to use the boat upon this occasion, and in attempting to do so we believe that he assumed the risk of so using and that he is not entitled to recover, and the judgment of the lower court is reversed.

*Judgment reversed with finding of facts.*

Finding of facts to be incorporated in the judgment of this court. We find that the accident which caused the loss of appellee's mules resulted from a danger the risk of which was assumed by appellee, under the law and facts in this case.